## HEATH VS. KEYES, impleaded, etc.

EXEMPTION. (1) *Statute to be liberally construed.* (2) *What property exempt.* (3) *Waiver of exemption.*
WITNESS. (4) *Wife of party not served, as witness for codefendant.*
REVERSAL OF JUDGMENT. (5) *Immaterial error.*

Heath vs. Keyes, impleaded, etc.

1. Our statute providing for the exemption of the property of debtors is to be liberally construed.

2. Among the articles of property exempted by said statute are enumerated "all beds, bedsteads and bedding kept and used for the debtor and his family." (R. S., ch. 134, sec. 32, subd. 6). Levy having been made upon property of a debtor described as "two feather beds, four quilts, four feather pillows and two cherry bedsteads," and it appearing that, when levied upon, such articles were kept for and actually used by the debtor and his family: *Held*, that they were exempt, and the fact that the debtor had other beds, etc., not levied on, was immaterial, unless it was shown affirmatively that the number was greater than was necessary or convenient for the use or comfort of himself and family.

3. The act of the debtor and another person, in *receipting* to the sheriff for the articles so levied upon, which were thus retained in the debtor's possession, did not constitute a *waiver* of the exemption, nor estop him and his coreceiptor from setting up such exemption as a defense, in an action by the sheriff on the receipt; it appearing that the property was claimed as exempt at the time of the levy, and no facts being shown which would make it a fraud upon the law to still insist upon such claim.

4. Where the action was in form against both the debtor and his coreceiptor, but process was not served upon the debtor and he did not appear, *quære*, whether his wife was a competent witness for the *other* defendant, or whether her husband would be so far bound by the judgment, under secs. 168, 169, ch. 120, R. S. (Tay. Stats., 1388, §§ 184, 185), as to make her incompetent.

5. The fact which the wife's testimony in this case tended to establish, being sufficiently shown by plaintiff's own evidence, the judgment in defendant's favor cannot be reversed for the admission of the wife's testimony, even if she was incompetent.

APPEAL from the Circuit Court for *Dodge* County.

This was an action upon a receipt given by the defendants to the plaintiff, as marshal of the village of Waupun, for goods levied upon by the latter by virtue of a writ of attachment against the property of the defendant *Hollister*. The summons was served on the defendant *Keyes*, but not upon *Hollister*, who made no appearance in the action.

The answer of *Keyes* admitted the execution of the receipt, but claimed that the goods receipted for were exempt from at-

tachment, and that *Hollister* had claimed them as such, and taken them from his control and custody. The remaining facts appear in the opinion of the court.

A judgment by the justice in favor of the defendant, for costs, was reversed by the circuit court, on appeal, with costs to the plaintiff. From the latter judgment defendant appealed to this court.

*Eli Hooker*, for appellant:

1. The statute exempts "all beds, bedsteads and bedding kept and used for the debtor and his family." The evidence clearly showed that the property receipted for was within this exemption; and that being the case, the plaintiff can maintain no action upon the receipt, for its nondelivery. Drake on Attach., §§ 370, 381; *Butterfield v. Converse*, 10 Cush., 317; *Sprague v. Wheatland*, 3 Met., 416; *Jameson v. Paddock*, 14 Vt., 491; *Moulton v. Chapin*, 28 Me., 505; *Cilley v. Jenness*, 2 N. H., 87; *Thayer v. Hunt*, 2 Allen, 449; *Allen v. Carty*, 19 Vt., 69; *Main v. Bell*, 27 Wis., 449. 2. The testimony of *Hollister's* wife was merely cumulative, and the judgment was clearly right upon the other evidence. The error, therefore, if any, in permitting her to testify, was immaterial, and the judgment of the justice should not have been reversed for that cause. *Manny v. Glendenning*, 15 Wis., 50; *Ganson v. Madigan*, 15 Wis., 144, 155; *State v. Avery*, 17 id., 672; *Savage v. Davis*, 18 id., 608; *Andrea v. Thatcher*, 24 id., 471; *Roach v. Town of Menomonee*, 24 id., 527; *Fenelon v. Hogoboom*, 31 id., 172; *Hazelton v. Union Bank*, 32 id., 34; *Decker v. Trilling*, 24 id., 615; R. S., ch. 125, sec. 40. 3. Counsel contended that the judgment in this action could not be used in evidence in a subsequent suit by the defendant *Keyes* against *Hollister* (Tay. Stats., 1388, §§ 184, 185; *Oakley v. Aspinwall*, 4 Coms., 513); and therefore the wife of the latter was a competent witness. 1 Greenl. Ev., 488, § 342; *Fitch v. Hill*, 11 Mass., 286; *Lewis v. McDougall*, 17 Wis., 517.

*H. E. Connit*, for respondent:

Three questions are submitted to the court: 1. Did not the defendant *Hollister*, by receipting to the marshal for the goods, all of the facts being known to him, waive any exemption to which he might have been entitled? Upon this point, see *People ex rel. Knapp v. Reeder*, 25 N. Y., 302. 2. Was the wife of the defendant *Hollister* a competent witness for the defendant *Keyes?* At common law she would not be, and the statute has not changed the rule. A judgment obtained in this action against the defendant *Keyes* would be binding on his codefendant, under secs. 168, 169, ch. 120, R. S., and therefore the wife of the latter is not competent. 3. Were the spare beds, kept but not ordinarily used by the family of the debtor, exempt from attachment? It would seem that these would come under the head of luxuries, and that the debtor would have no right to provide for contingencies that may never happen.

COLE, J. The principal question in this case is, Was the property seized on the attachment against *Hollister* exempt under the statute? It consisted of two feather beds, four quilts, four feather pillows and two cherry bedsteads. The plaintiff himself testified that when he made the levy on this property, the beds and bedding were put up, and had the appearance of being used by the debtor and his family. He further says that he saw in the debtor's house only one or two beds besides the two which he levied on, and that these had no feather beds on them. He had a conversation with the debtor's wife at this time, as to whether the beds were exempt, and he thinks he told her "they were entitled to one bed for each two persons in the family." And the officer, acting doubtless on this view of the statute, made the levy in question. It is by no means certain that even under this construction of the law the property would not be exempt. But, however this may be, we are clearly of the opinion that, on the facts appearing on the trial, the beds and bedding were not liable to be seized on attachment or any final process issued from any court.

Among other personal property which the statute declares shall not be liable to attachment or sale on execution, are the following enumerated articles: "all beds, bedsteads and bedding kept and used for the debtor and his family." Subd. 6, sec. 32, ch. 134, R. S. Now if the beds, bedsteads and bedding were kept and used (as the officer says they appeared to be) for *Hollister* and his family, then by the express language of this provision they were exempt.

But it is suggested by the plaintiff's counsel, that the debtor had beds and bedding other than the ones levied on, and that there is no reason for saying that all are exempt. It is a sufficient answer to this suggestion to say that there is nothing in the case which warrants the assumption that the beds and bedding claimed by the debtor were excessive, and more than he was entitled to by law. It appears that he kept and used them with the other straw beds for the use of himself and family; and we must presume they were no more than were necessary for their comfort and convenience. It is a cardinal rule in the construction of statutes of this character, that they are to receive a liberal interpretation. Observing this rule of construction, we must surely hold, upon the evidence, that the beds and bedding in controversy, being kept and used for the debtor and his family, were presumptively exempt, and it devolved upon the plaintiff the duty of showing (if such were the fact) that the exemption claimed was excessive.

When the plaintiff seized the property under the attachment, *Hollister* and his codefendant gave a receipt to deliver it on demand, and the property was not taken from the possession of the debtor. It is now claimed that the debtor, by thus receipting for the property, waived his exemption, and is estopped from afterwards claiming it as exempt. We cannot assent to the correctness of this position. It satisfactorily appears from the evidence, that *Hollister* claimed that the property was exempt when it was seized on the attachment.

The fact that he gave the receipt rather than have the beds removed from his house and taken into the possession of the officer, ought not to prejudice his rights. Suppose *Hollister* had delivered the property to the plaintiff on the receipt, could he not at once have brought his action to recover possession of it again upon the ground that it was exempt? We know of no principle of law which would prevent him from doing this. Possibly cases might arise where the debtor would not be permitted to claim property as exempt after having given a receipt to the officer for its delivery. It might be a fraud upon the law to allow him to make such a claim. But there are no facts or circumstances in this case which show that *Hollister* did anything to mislead the officer in regard to his property, or which could in any way prejudice the rights of his creditor. He was not bound to relinquish his exemption for the benefit of his creditor, and the evidence shows clearly that he did not when the property was seized. It seems to us there is no ground for applying the doctrine of estoppel *in pais* to the conduct of *Hollister.*

This action was brought upon the receipt, and the defendant *Keyes* showed that the property was not in his possession, but remained in the possession of the debtor, who claimed it as exempt. This was a perfectly valid defense under the rulings in *Main v. Bell*, 27 Wis., 517, and *Connaughton v. Sands*, 32 id., 387.

In this case, the wife of *Hollister* was allowed to be a witness for the defendant *Keyes*, in the justice's court, against the objection of the plaintiff that she was incompetent; and we are informed by the counsel that the circuit court reversed the judgment of the justice on account of the error in admitting her testimony. It is claimed by the counsel of *Keyes* that in any event she was a competent witness, because her husband was not a real, but only a formal party to the record. *Hollister* was not served with process, and made no appearance; and it is said that the judgment against *Keyes* would not conclude

him, nor could it be used as evidence against him in any subsequent action. Therefore, it is argued, Mrs. Hollister was not a witness. either for or against her husband. To this it is answered that the judgment in this action would be evidence of the extent of the plaintiff's demand against *Hollister* in a subsequent suit brought against him, by virtue of sections 184 and 185, ch. 120, Tay. Stats. This raises a very important question as to the meaning and proper construction to be placed upon these provisions of the statute. We do not deem it necessary, however, to pass upon that question in the case before us. For, assuming that Mrs. Hollister was not a competent witness in the cause, we still think her testimony could not possibly have prejudiced the plaintiff. The object of her testimony was to show that the property was exempt, and was claimed to be exempt by her husband when seized on the attachment. It abundantly appears by other evidence that the debtor claimed that the beds and bedding were exempt; and we have already alluded to the testimony of the plaintiff, where he says that they were put up in the house of *Hollister*, and appeared to be kept and used for the family. On the plaintiff's own showing, therefore, *prima facie*, the property levied on was exempt, and the testimony of the wife could do him no harm, even if improperly admitted. The judgment of the justice should not have been reversed for an immaterial error, which could have injured no one. This rule is well settled. in the cases cited on the brief of counsel for the defendant *Keyes*.

It follows that the judgment of the circuit court must be reversed, and that of the justice affirmed.

*By the Court.* — So ordered.