COMSTOCK, Respondent, vs. BECHTEL, Appellant.

*September 4 — September 22, 1885.*

*Execution: Fraudulent purchase of exempt property.*

An insolvent debtor who sells property which is subject to levy on execution, and with the proceeds immediately purchases exempt property, will be presumed to have done so with intent to hinder, delay, or defraud his creditors; but the property so purchased does not, for that reason, cease to be exempt. The only remedy of the creditors is by attacking the sale of the non-exempt property.

APPEAL from the Circuit Court for *Dane* County.

Replevin for two horses, one harness, one sleigh, one wagon, and two cows, alleged to have been levied upon and seized by the defendant, who was the sheriff of Dane county, by virtue of a certain attachment and an execution duly issued by the circuit court of that county against the property of the plaintiff, and in the hands of such sheriff for service. The plaintiff claims that the property in controversy is exempt from seizure by virtue of such writs.

In his answer the defendant justifies the seizure of the property by virtue of the aforesaid writs, and alleges that the same is not exempt from being so seized, because the plaintiff was one of a firm hopelessly insolvent, against which judgments for large amounts had been rendered, and others were about to be entered in actions then pending, and that plaintiff, for the purpose of defrauding the creditors of such insolvent firm, sold certain notes and securities owned by him, and not exempt, and with the proceeds thereof purchased the property so seized with the intention of holding it as exempt property.

The cause was tried by the court without a jury. The court found that the defendant was sheriff of Dane county, and as such, by virtue of valid process, seized the property claimed on February 1, 1884, and that at the time of such

seizure the same was all the personal property which the plaintiff owned; also that the value of the property was $685, and that the amount for which such writs were issued exceeded that sum. The more material findings of fact are as follows:

"5. That on the 31st day of December the said plaintiff was the owner of, and held in his own name, a note secured by mortgage upon real estate, of the value of $1,200, and one note of the value of $100.

"6. That at this time the said plaintiff was heavily indebted and wholly insolvent; that said plaintiff, although repeatedly requested by his creditors to pay his indebtedness immediately preceding the date of the purchase of said property, to wit, January 1, 1884, neglected so to do; that said plaintiff, at the time so requested by his creditors to pay his indebtedness, stated to his said creditors that he was unable to pay, and that he did not have or own any property or money wherewith to pay and discharge his indebtedness.

"7. That said plaintiff did, on the 31st day of December, 1883, dispose of and sell said notes to one Stewart Shampnor, and thereby intended to prevent and keep his creditors from levying on said notes for the purpose of satisfying their claims, and that the said plaintiff, on the 1st day of January, 1884, did use the funds by him raised on the sale of the notes as aforesaid, and applied said funds in payment of the purchase price of the property above described, and by him so claimed as personal exemptions, and that the said plaintiff, by said purchase of said property, intended to and did acquire the personal property exemptions by law provided, and that said plaintiff, by said immediate purchase, intended to prevent his said creditors from interfering with his said rights to acquire said personal property exemptions by means of their levying on and applying said moneys in satisfaction of their claims and demands against him."

As conclusions of law the court found "that said plaintiff is entitled to the return of said property, and to hold it as his personal property exemptions;" also that he was entitled to recover nominal damages and costs. Judgment for the plaintiff was ordered and entered accordingly. The defendant appeals.

The cause was submitted for the appellant on briefs by *Rufus B. Smith*, and for the respondent on briefs by *La Follette & Siebecker.*

For the appellant it was contended, *inter alia*, that the privilege of exemption is the grant of a personal privilege. The law will not permit a man to receive this grant unless he does so with clean hands. Where the exemption is the direct result of a man's own wrong-doing, the law says he shall not profit by it. *Emerson v. Smith*, 51 Pa. St. 90; *Brackett v. Watkins*, 21 Wend. 68; *Wilcox v. Hawley*, 31 N. Y. 648; *Frazier v. Barnum*, 19 N. J. Eq. 316; *Fuller v. Sparks*, 39 Tex. 136; Thompson on Homest. & Ex. sec. 426 *et seq.; Strouse's Ex'r v. Becker*, 38 Pa. St. 190; *In re Wright*, 3 Biss. 359; *Pratt v. Burr*, 5 id. 36; *Huey's Appeal*, 29 Pa. St. 219; *Riddell v. Shirley*, 5 Cal. 488.

For the respondent it was argued that exemption laws should be regarded as expressing a *policy of the state*, rather than as granting a *personal privilege. Duvall v. Rollins*, 71 N. C. 221. The acceptance of this view by the courts is shown by the liberal construction given to such laws *(Kuntz v. Kinney*, 33 Wis. 510; Thompson on Homest. & Ex. sec. 731); and by the fact that the exemption is treated as not being exclusively for the benefit of the debtor, but also for his family, and that they may not become a public charge. These laws have, therefore, no reference to the merit or demerit of the debtor, or to his solvency or insolvency, or to the character and relation of the parties concerned. *Wilcox v. Hawley*, 31 N. Y. 648; *Connaughton v. Sands*, 32 Wis. 387; *Moseley v. Anderson*, 40 Miss. 54. There are three

Comstock vs. Bechtel.

propositions of law adhered to by the courts and laid down with more or less definiteness by the leading text writers, which sustain this view. (1) A conveyance of exempt property, even if set aside as fraudulent, does not render such property liable for debts. *Dreutzer v. Bell*, 11 Wis. 114; *Pike v. Miles*, 23 id. 164; *Hibben v. Soyer*, 33 id. 319; *Carhart v. Harshaw*, 45 id. 340; *Allen v. Perry*, 56 id. 178; *Duvall v. Rollins*, 71 N. C. 218; *Anthony v. Wade*, 1 Bush, 111; *Smith v. Rumsey*, 33 Mich. 183; *McFarland v. Goodman*, 6 Biss. 117; *Cox v. Wilder*, 2 Dill. 49. (2) If an insolvent debtor convey away all his property not exempt, even with the intent to hinder and delay creditors, he does not thereby render his exemptions liable for his debts. *Wilcox v. Hawley*, 31 N. Y. 648; *Moseley v. Anderson*, 40 Miss. 54; *Callaway v. Carpenter*, 10 Ala. 503; *Megehe v. Draper*, 21 Mo. 510. (3) If an insolvent debtor has property liable to legal process, he may, as in this case, convert it into property that is exempt. *O'Donnell v. Segar*, 25 Mich. 367; *Tucker v. Drake*, 11 Allen, 146; *Randall v. Buffington*, 10 Cal. 491; *In re Henkel*, 2 Sawyer, 305; *Cipperly v. Rhodes*, 53 Ill. 346; *North v. Shearn*, 15 Tex. 174; Bump on Fraud. Conv. 245; Thompson on Homest. & Ex. secs. 305, 435; Freeman on Executions, sec. 214.

LYON, J. The circuit court found that the plaintiff sold the notes mentioned in the findings of facts with the intention of preventing a seizure thereof by his creditors; and that, with the proceeds of the notes, he purchased the property in controversy, intending thereby to acquire exempt personal property which would be beyond the reach of his creditors. That such were the intentions of the plaintiff is the inevitable conclusion from the facts of the sale of the notes and the purchase of the property, because it must be presumed that the plaintiff intended the necessary results of his acts, and it was the necessary and inevitable result of

such sale and purchase (if valid) that the notes, and the property purchased with the proceeds thereof, were thereby placed beyond the reach of creditors of the plaintiff. The intention of the plaintiff is, therefore, rather the subject of a conclusion of law to be deduced from the facts, than an independent fact in the case. The findings would not have been any more favorable to the plaintiff had nothing been said therein concerning his intentions; and for like reasons they would not be any less favorable to him had the court found expressly that such sale and purchase were made by the plaintiff with intent to hinder, delay, or defraud his creditors. That also is the subject matter of a deduction from the facts.

The material facts are, therefore, that the plaintiff was wholly insolvent; that he owned two notes which were liable to be reached by his creditors; and that he sold such notes, and, with the proceeds, immediately purchased the property in controversy. From these facts the intention of the plaintiff to place his property beyond the reach of legal process must be presumed.

The precise question to be determined is, therefore, Is property which under the statute (subd. 6, sec. 2982, R. S.) is ordinarily exempt from seizure on attachment or execution, liable to such seizure if the debtor is insolvent and has purchased the property with the proceeds of other property, not exempt, with the intention of holding the property so purchased as exempt, and thus preventing his creditors from collecting their debts out of his property? The question now arises for the first time in this court.

The creditors whom the defendant (the sheriff) represents do not attack the validity of the sale of the notes by the plaintiff, or the purchase by him of the property in controversy. On the contrary, their theory necessarily is that both the sale and purchase are legal transactions,— the sale divesting the plaintiff of all title to the notes, and the pur-

chase vesting in him a good title to the property thus acquired. But they maintain that because the notes might have been reached by legal process while the insolvent debtor owned them, it ought to be held that no right of exemption to the property purchased with the proceeds of the notes ought to be upheld. Several cases are cited by counsel for defendant to this proposition, and it is doubtless sustained by some of them, particularly by *Riddell v. Shirley*, 5 Cal. 488; *Emerson v. Smith*, 51 Pa. St. 90; *Brackett v. Watkins*, 21 Wend. 68; *Grimes v. Byrne*, 2 Minn. 104; *In re Wright*, 3 Biss. 359; *Pratt v. Burr*, 5 Biss. 36. It is understood, however, that the opposite doctrine now prevails in California and New York. See *Randall v. Buffington*, 10 Cal. 491; *Wilcox v. Hawley*, 31 N. Y. 648.

We think it must be conceded that there are very serious objections to the doctrine which the cases first above cited (and perhaps others) seem to assert. In the first place, it interpolates a qualification or limitation in the statute of exemptions not written therein by the legislature. The statute exempts the specific property therein mentioned absolutely and unconditionally. The rule of these cases is that it shall not be exempt at all if purchased by an insolvent debtor with the proceeds of non-exempt property. This court has steadily held that it has no authority to make such interpolations. *Harrington v. Smith*, 28 Wis. 43; *Chase v. Whiting*, 30 Wis. 544.

Counsel for the defendant seeks to avoid the force of this principle by saying that courts do, by construction, sometimes ingraft exceptions upon statutes, and he refers, as an illustration, to the line of cases which hold that the contributory negligence of the injured party will defeat a recovery in an action against a town to recover damages for an injury alleged to have been caused by a defective highway, whereas the statute giving the right of action contains no such qualification of the right. The cases are not parallel.

The statute gives a right of action only when the injury is caused by the insufficiency of the highway. The courts merely hold that the injury is not so caused if the negligence of the injured party contributes proximately to it. Those are cases of authorized construction of the words of a statute. In this case we are asked to engraft a limitation upon a statute when there is not a line or a word therein which will justify it.

Again, the doctrine under consideration rests upon the ground that exemption is merely a personal privilege of the debtor which the courts may lawfully adjudge forfeited for his fraud and dishonesty. This is too narrow a view. Our exemption laws were enacted in obedience to the mandate of the constitution: "The privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted." Art. I, sec. 17.

This mandate and these laws are grounded in the soundest considerations of public policy, in that they are designed to secure not only to the debtor, but to his family, the necessary comforts of life, as against his creditors; thus protecting and guarding the highest interests both of the individual citizen and the family, the benefits of which to the state can scarcely be overrated. In *Maxwell v. Reed,* 7 Wis. 582, Mr. Justice SMITH spoke of the exemption laws as "one of the great bulwarks of individual freedom and manly citizenship, so carefully guarded by the fundamental law." In dealing with the exemption laws this court has steadily kept these considerations in view, and has rejected every construction of them which would tend to defeat the beneficent purposes for which they were enacted. It has always given them a liberal construction in favor of the exemption, and in the case last cited, it held that a stipulation in a note, waiving the benefit of such laws in respect to the indebtedness

Comstock vs. Bechtel.

thereby created, was inoperative and void, because opposed to a sound public policy. The principles upon which this court has uniformly thus acted seem to be disregarded in the cases which hold that in a case like this the right of exemption is forfeited.

Moreover, the rule of these cases would deprive insolvent debtors of the right to acquire any exempt property with the proceeds of property not exempt. An insolvent debtor may have $50 in his pocket. While he retains the money his creditors may reach it by legal process. Under the rule above mentioned, if he should purchase a cow with the money, no matter how sorely he and his family may need the cow, the creditor may seize and sell her upon execution. And this, not because it was a fraud on the creditor for the debtor to purchase the cow with his own money, but because such a use of the money operated in some mysterious way to repeal the exemption laws in respect to that particular cow.

For the reason above suggested we cannot approve the doctrine of the cases relied upon by the defendant to defeat the plaintiff's right of exemption in the property in controversy. The true rule is, if the plaintiff made a fraudulent sale of the notes his creditors may reach them in the hands of the fraudulent purchaser, collect or sell them, and apply the proceeds on their demands. That is their only remedy against the fraud, and the sale of the notes is the only fraud in the transaction. The purchase by the plaintiff of exempt property with the proceeds of the notes was a legal transaction, containing no element of fraud. The absolute title to the property so purchased vested in the plaintiff, one of the incidents of which was the right under the exemption laws to hold it against his creditors.

The foregoing views are sustained by a large number of cases cited by counsel for plaintiff, references to which will be found in the report. We are satisfied that these cases

lay down the correct rules of law applicable to this case. It follows that the plaintiff is entitled to hold the property claimed exempt from seizure, and hence that the case was correctly decided by the circuit court.

*By the Court.*— Judgment affirmed.