**In re Ronald Lavern BRUSKI and Bonnie Joan Bruski, Debtors.**

**Bankruptcy No. 97–56040–7.**

United States Bankruptcy Court, W.D. Wisconsin.

Sept. 11, 1998.

Terrence J. Byrne, Wausau, WI, for Debtors.

Mark J. Wittman, Marshfield, WI, Chapter 7 Trustee.

*MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW*

THOMAS S. UTSCHIG, Bankruptcy Judge.

When Mark Twain wrote *The Prince and the Pauper,* he wrote of two boys, one the heir to the throne of England and the other a street urchin, who traded places and learned that the other's life had distinct challenges neither would have realized. Wealthy Americans today may not live like the King of England, but they enjoy numerous opportunities not available to the common wage earner. This case features husband and wife debtors who, somewhat akin to Mark Twain's urchin, suddenly found themselves able to partake of one of the retirement luxuries of the wealthy. They want to retain this benefit in their bankruptcy. The question posed is whether an average citizen is entitled to claim as exempt an investment vehicle which Congress designed to afford tax relief for the rich.

 Bankruptcy law is generally perceived as being intended to allow debtors a "fresh start" in life.[1] Debtors are freed of burdensome debt and permitted to retain some nominal assets by virtue of the exemption statutes.[2] At the same time, bankruptcy law is designed to be fair to creditors. The primary benefit to creditors is that bankruptcy offers the orderly liquidation and distribution of any non-exempt assets. This case highlights the tension which often results between these two divergent goals. The debtors are represented by Terrence J. Byrne, while Mark J. Wittman, the Chapter 7 trustee, serves as his own attorney.

The trustee has objected to the debtors' exemption for a Flexible Premium Retirement Annuity which they purchased on the eve of bankruptcy. The facts are these. Long before bankruptcy was an issue, Mr. Bruski purchased a 1969 Corvette and a 1984 Corvette at salvage and restored them. The vehicles were owned free and clear of any liens. Immediately prior to the bankruptcy, the debtors used the vehicles as collateral to obtain a $13,500.00 loan. They then used the loan proceeds to purchase a $16,000.00 tax-deferred annuity. Within a few weeks, they filed bankruptcy and claimed the annuity as exempt. The debtors concede that had they filed bankruptcy before they obtained the loan and bought the annuity, the vehicles could have been sold by the trustee and the proceeds distributed to creditors.

The debtors elected to use the Wisconsin exemptions and claimed the annuity as exempt under Wis. Stat. § 815.18(3)(j). This provision permits a debtor to claim as exempt:

> Assets held or amounts payable under any retirement, pension, disability, death benefit, stock bonus, profit sharing plan, annuity, individual retirement account, individual retirement annuity, Keogh, 401–K or similar plan or contract providing benefits by reason of age, illness, disability, death or length of service and payments made to the debtor therefrom.

The trustee filed a timely objection to this exemption claim. His reasoning is simple. He contends that the annuity in question is not a retirement benefit but a "tax-sheltered investment." Although the annuity qualifies for tax-deferred status under IRC section 72, the trustee argues that it must also meet the requirements of IRC sections 401–409. These sections cover pension, profit-sharing, stock bonus, and other retirement plans. Crucial to the trustee's argument is this point: that there is no limit on the amount

---

1. The purpose of the Bankruptcy Code is to allow debtors to reorganize their affairs and enjoy a new opportunity in life. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). However, this fresh start is limited to the "honest but unfortunate" debtor. *Id.,* 498 U.S. at 287, 111 S.Ct. 654.

2. While the federal exemptions remain relatively modest, *see* 11 U.S.C. § 522(d), the Bankruptcy Code does permit debtors to utilize state exemption provisions, and many states have "opted out" of the federal exemptions entirely. This patchwork quilt has resulted in various exemptions which, intentionally or otherwise, are quite generous. For example, a number of states, such as Florida and Oklahoma, have unlimited homestead exemptions. This case features yet another exemption which could offer debtors considerable latitude when engaging in "exemption planning."

that can be invested in a tax-deferred annuity. As a result, the trustee believes that such an annuity simply cannot be exempt.

Pension plans, stock option plans, individual retirement accounts, and other deferred investment vehicles have long troubled bankruptcy courts when it comes time to determine whether a debtor has properly claimed such things as exempt property. For example, this Court has ruled that IRAs qualify for exemption under the federal exemption statute as "similar plan[s]" to those enumerated in 11 U.S.C. § 522(d)(10)(E). *In re Cilek*, 115 B.R. 974 (Bankr.W.D.Wis.1990); *see also In re Staniforth*, 116 B.R. 127 (Bankr.W.D.Wis.1990) (IRAs also exempt under Wis. Stat. § 815.18(31)).

■ Shortly after the *Staniforth* decision, the Wisconsin legislature altered the exemption statute and modified the provisions relating to retirement benefits. The old statute only exempted those plans which were created by an employer (or a self-employed person). *Matter of Woods*, 59 B.R. 221 (Bankr.W.D.Wis.1986). Now, however, § 815.18(3)(j) extends even to those investment vehicles which are solely funded by the debtor, as long as those vehicles comply with the provisions of the internal revenue code. *See* Wis. Stat. § 815.18(3)(j)(2).

The trustee's primary argument boils down to what constitutes "compliance" with the internal revenue code. Is tax-deferred status sufficient, or must there be some restriction upon the amount of annual contributions to the plan? The trustee contends that the Wisconsin legislature must have meant compliance with sections 401–409 of the IRC and wishes the Court to restrict the exemption to those plans or annuities which have limits upon the annual contribution amount.

The debtors contend that as the annuity qualifies for tax-deferred status under IRC § 72, it "complies" with the IRC and is exempt. Further, the annuity purports to pay benefits to the holders once they reach age 59½, thus satisfying the condition that the annuity pay benefits on account of age. The debtors also point out that the early withdrawal of the funds will subject any income to taxation and penalties, and will also incur a penalty imposed by the insurance company which issued the annuity. While the trustee complains that these penalties are insignificant and that this interpretation would permit the debtors to avoid the restrictions of a spendthrift trust, it must be pointed out that traditional IRAs have no greater restrictions upon withdrawal and are exempt. Therefore, it cannot be the withdrawal provisions themselves which determine the validity of the exemption.

■ That brings the matter full circle, back to the issue of the meaning of "compliance." Both sides suggest that the other's interpretation of the statute would render various other provisions meaningless. The Court's task here is to ascertain the "plain meaning" of the statutory language and hold in accordance with that meaning. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("We have stated time and again that courts must presume that a legislature says what it means and means in a statute what it says there"); *see also U.S. v. Ron Pair*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The statute states that "any" annuity is exempt as long as it complies with the internal revenue code. The trustee contends that since all income is taxed in accordance with the code, the legislature must have intended to incorporate the restrictions of sections 401–409 by the reference to compliance. But this argument proves too much. It is not whether the annuity is taxable in accordance with the code, but whether the tax is deferred in accordance with the code. If so, the annuity qualifies for the exemption.

The trustee's argument is that the legislature could not have contemplated this result, again focusing on the fact that there is no limitation on the amount of contributions which can be made to such an annuity. The trustee believes that the debtors' interpretation of the statute would set a bad precedent. The concern is that other debtors might utilize an annuity to shelter more than a relatively insignificant $16,000.00, thereby emerging from bankruptcy with more than a "fresh start"—perhaps a "head start." For debtors to hold on to their retirement earnings is one thing; the trustee fears that this

practice will result in the virtual elimination of asset bankruptcies, which are few and far between to begin with. The trustee states that this is not a retirement plan; it is a "tax-sheltered investment." The Court must admit that from the standpoint of the wealthy investor, for whom Congress designed the tax loophole, this is likely true. At the same time, it is only "sheltered" from taxation because as an annuity it is presumably created for retirement purposes.[3]

Even if the Court accepts the trustee's complaint about the investment nature of this type of annuity, the question is whether the concern matters in the context of this case. F. Scott Fitzgerald wrote, "Let me tell you about the very rich ... they are different." To those in the upper income brackets, the fact that taxes take only a proportionate share of their income is little consolation. When they ask Congress for tax relief, Congress obliges them by creating numerous "tax shelters." As a result, these wealthier citizens can put the maximum into their own pension plans, such as a 401(k) or 403(b) plan, and then contribute to their individual retirement accounts. More particularly, Congress also permits the investment of any amount in a retirement annuity and, while the principal is subject to taxation initially, the tax on any earned income is deferred.

■ The wealthy can afford to look around for other investment vehicles to shelter their income from taxes. The poor cannot. If they are lucky, they may have an employer-sponsored 401(k) or the like available to them, but they rarely have any income left to justify even the knowledge that these other "retirement plans" exist. In this case, the debtors have a 401(k) plan through Mr. Bruski's employer. They also opted to put

money in an annuity, just like their wealthier neighbors might do. The debtors state that together with social security and Mr. Bruski's 401(k), this annuity is their only likely source of retirement income.[4] If Congress has determined to give these annuities tax-deferred status, it would appear that such status is all that is necessary to "comply" with the internal revenue code. And if Wisconsin chooses to grant an exemption for such annuities, without regard to the reasonableness of the amount held in the annuity, it is not the Court's place to second-guess.[5]

■ The trustee suggests that this course may lead to fewer asset chapter 7 bankruptcies. This may well be. But debtors are to be permitted the "full use" of the available exemptions and will not be penalized for ordering their affairs in such a manner as to take best advantage of the exemptions. *Matter of Smiley*, 864 F.2d 562, 567 (7th Cir.1989). As Judge Learned Hand stated, "[T]here is nothing sinister in so arranging one's affairs as to keep taxes as low as possible." *Commissioner v. Newman*, 159 F.2d 848, 850–51 (2d Cir.1947). So-called "exemption planning" is not far removed from tax planning, and in both instances debtors are entitled to structure their affairs in the most favorable manner. The Court can only presume that the Wisconsin legislature knew what it was doing in crafting this exemption. After all, it had the federal statute as a model, and that statute contains a provision which limits the retirement benefit exemption to an amount "reasonably necessary" for the support of the debtor. The legislature chose not to adopt such a provision, although they clearly knew how, given that they placed such a limit upon the exemption for life insurance claims, personal injury claims, and wrongful death claims. *See* Wis. Stat. § 815.18(3)(i).

---

3. Congress did not, for example, create a tax shelter for just *any* investment vehicle; instead, they tied the shelter to a traditional retirement-oriented annuity. For whatever reason, political or otherwise, Congress felt it necessary to tie this generous tax break to an instrument which is at least nominally a retirement benefit.

4. According to the debtors' schedules, Mr. Bruski's 401(k) has about $51,000.00 in it. The trustee has not objected to their exemption for the 401(k). When considered against the amount of money necessary for retirement in this

country, neither the debtors' 401(k) or the annuity can be considered exorbitant.

5. Under 11 U.S.C. § 522(d)(10), pension plans and the like are only exempt "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." Under the federal exemption scheme, courts can assess whether the exemption claim is appropriate. *In re Moffat*, 959 F.2d 740 (9th Cir.1992). The Wisconsin statute does not contain such a limitation.

The Court found little case law directly on point. Much attention has been paid to IRAs and pension plans in recent years, but the precise tactic of these debtors has received relatively little scrutiny. One case, however, is instructive. The court in *In re Hunsucker*, 106 B.R. 220 (Bankr.D.Mont. 1988), was confronted with a "Beneficial Flexible Purchase Retirement Annuity" which the debtor had purchased. The trustee argued that the annuity did not qualify for an exemption because it was strictly voluntary and terminable at will, and because the beneficiary could withdraw all or nearly all of the funds with minimal consequences. The court concluded that these objections were not grounds to deny the exemption. Instead, the court allowed the exemption under 11 U.S.C. § 522(d)(10)(E). *Id.* at 222.

■ The trustee's concern in this case is laudable, as it is unclear whether such an unlimited exemption truly should have been created. It might theoretically lead to far greater exemption claims than the relatively modest amount at issue here.[6] However, while debtors are to be permitted to take full use of the available exemptions, their tactics in converting non-exempt property to exempt property on the eve of bankruptcy may trigger adverse consequences if their conduct warrants. *See Norwest Bank Nebraska, N.A. v. Tveten*, 848 F.2d 871 (8th Cir.1988) (court found fraudulent intent on part of debtor who converted $700,000 in non-exempt assets to exempt assets); *see also In re Johnson*, 880 F.2d 78, 82 (8th Cir.1989) (amount of property converted into exempt assets can be taken into account in determining fraudulent intent); 11 U.S.C. § 105(a) (court may make any order "necessary or appropriate ... to prevent an abuse of process"); 11 U.S.C. § 707(b) (authorizing dismissal of case where "substantial abuse" of bankruptcy is evident).

■ In this case, the Court sees no indicia of bad faith or fraudulent intent. The Wisconsin legislature has spoken, and the Court will give effect to the plain meaning of Wis. Stat. § 815.18(3)(j). The Supreme

Court has stated that the "plain meaning" of legislation should be conclusive except in rare cases. *Ron Pair*, 109 S.Ct. at 1031, 103 L.Ed.2d at 296. The Wisconsin statute clearly states that an annuity is exempt if it is tax deferred. This annuity qualifies. Just because the debtors were actually able to utilize an investment vehicle typically reserved for the wealthy does not mean they should be penalized for sheltering a nominal amount in this manner. The trustee's policy concerns cannot override the simple fact that the statute provides that assets held in "any" annuity which has tax-deferred status under the internal revenue code are exempt under Wisconsin law. Should it appear in future cases that debtors are acting in bad faith, the Court has within its power the ability to fashion an appropriate remedy.

Accordingly, the trustee's objection is overruled, and the exemption is allowed.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

---

6. And it is indeed modest. Sixteen thousand dollars will buy a stripped-down new car, and that's about it. At the same time, the trustee's concerns for the future are shared by the Court—for debtors will indeed try to shield their assets as best they can. These debtors at least were honest about their activities, and did not transfer the assets to friends or relatives, or to an offshore trust as some "rich" debtors do, and then deny any knowledge of the assets.