**In re William J. BOGUE and Judith L. Bogue, Debtors.**

**Bankruptcy No. 97–28907–JES.**

United States Bankruptcy Court,
E.D. Wisconsin.

Aug. 2, 1999.

Todd C. Esser, Milwaukee, WI, Chapter 7 Trustee.

Michael G. Trewin, New London, WI, for debtors.

## DECISION

JAMES E. SHAPIRO, Chief Judge.

Todd C. Esser ("Trustee") has objected to the exemption claimed by William Bo-

gue ("debtor" or "Mr. Bogue") in two annuity contracts.[1] This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). This matter has been submitted to the court upon a stipulation of facts and briefs.

The trustee contends that the two annuity contracts are not within the retirement benefits exemption of Wis.Stats. § 815.18(3)(j)[2] because neither "complies with the provisions of the internal revenue code" as required under subsection (2)(a) of this exemption statute. The trustee further asserts that these annuities are ineligible to be claimed as exempt because they do not provide benefits "by reason of age, illness, disability, death or length of service." Finally, the trustee asserts that, even if the annuities are exempt, they should be denied exemption status because, pursuant to Wis.Stats. § 815.18(10),[3] the debtors "procured, concealed, or transferred assets with the intention of defrauding creditors."

### Stipulated Facts

On August 13, 1997, Mr. Bogue purchased an annuity contract for $10,300 with proceeds obtained from the sale of debtors' personal property. On September 5, 1997, Mr. Bogue purchased a second annuity contract for $7,500 with proceeds obtained from the sale of the debtors' real estate. The debtors and trustee have stipulated that the funds used to purchase these annuities are not exempt under the Wisconsin statutes and that the annuities were purchased with the intention of being listed as exempt in the debtors' subsequent bankruptcy schedules.

On September 9, 1997, the debtors filed a petition in bankruptcy under chapter 7. On November 20, 1997, the trustee timely filed an objection to this exemption.

### Do the Annuities Comply With the Provisions of the Internal Revenue Code?

■ The trustee submits that the annuities are not exempt under Wisconsin's retirement benefits exemption because they do not comply with §§ 401–409 of the Internal Revenue Code. The trustee contends that these Internal Revenue Code sections are what subsection (2)(a) of Wis. Stats. § 815.18(3)(j) meant as "[compliance] with the provisions of the internal revenue code." It is the trustee's position that the two annuities involved in this case

---

1. The terms "annuities" and "annuity contracts" as used in this decision are interchangeable.

2. **815.18 Property exempt from execution.**

---

(3) EXEMPT PROPERTY. The debtor's interest in or right to receive the following property is exempt, except as specifically provided in this section....

---

(j) *Retirement Benefits.* 1. Assets held or amounts payable under any retirement, pension, disability, death benefit, stock bonus, profit sharing plan, annuity, individual retirement account, individual retirement annuity, Keogh, 401–K or similar plan or contract providing benefits by reason of age, illness, disability, death or length of service and payments made to the debtor therefrom.

2. The plan or contract must meet one of the following requirements:

a. The plan or contract complies with the provisions of the internal revenue code.

Note: 815.18(3)(j)(2)(b) provides an alternative requirement to 813.18(3)(j)(2)(a), but has

no application in this case. This alternative requirement only applies to employer-created plans or contracts.

3. **815.18 Property exempt from execution.**

---

(10) FRAUDULENT TRANSFERS. A conveyance or transfer of wholly exempt property shall not be considered a fraudulent conveyance or transfer. Property that is not totally exempt in value under this section may be subject to a fraudulent transfer action under ch. 242 to set aside that transfer to the extent that the property's value is not exempt under this section. If a court is required to satisfy the claim of a creditor and if that relief is demanded, the court may determine the manner of dividing fraudulently transferred property into exempt and nonexempt portions, or may order the sale of the whole property and an accounting of the exempt portion. Any or all of the exemptions granted by this section may be denied if, in the discretion of the court having jurisdiction, the debtor procured, concealed or transferred assets with the intention of defrauding creditors.

are not retirement plans or contracts but are, in reality, a "tax-sheltered investment" and ineligible to be claimed as exempt. The trustee argues that only annuities which are governed by and satisfy IRC §§ 401–409 are eligible to be claimed as exempt, and they do not include the types of annuities involved here. He further argues that the intent of the Wisconsin retirement benefits exemption statute is to exempt only "traditional retirement plans."

The debtors take issue with that position. They submit that the two annuities in this case need not comply with IRC §§ 401–409. The debtors submit that they do comply with the Internal Revenue Code as mandated under subsection 2(a) because they meet the requirements of IRC § 72 and, more precisely, IRC § 72(s)(1).[4]

The problem here is that subsection 2(a) of the Wisconsin retirement benefits exemption statute makes no reference to any specific provisions of the Internal Revenue Code. It only states that as a requirement for being eligible for exemption purposes "the plan or contract complies with the provisions of the internal revenue code." It does not refer to IRC §§ 401–409, IRC § 72, or any other provision of the Internal Revenue Code. It is for this court to interpret the meaning of this statutory language. This, in turn, will require an understanding of the annuity contracts in question as well as an understanding of IRC §§ 401–409 and IRC § 72. A review of this type of exemption in other state statutes reveals that some states specifically tie this exemption for annuities to IRC §§ 401–409. See, e.g., Cal.Civ.Proc. Code § 703.140(b)(10)(E) (West 1998), Kan.Stat.Ann. § 60–2308 (1998), Me.Rev.

Stat.Ann. tit. 14, § 4422(13)(E) (West 1998), S.C.Code Ann. § 15–41–30(10)(E) (Law Co-op.1998), Tenn.Code Ann. § 26–2–104(b) (1998), Utah Code Ann. § 78–23–5(1)(A)(X) (1998), Va.Code Ann. § 34–34A (Michie 1998), and W.Va.Code § 38–10–4(j)(5) (1998). Other states, however, have broader language which is similar to Wisconsin and do not limit the exemption to IRC § 401–409. See, Ill.Ann.Stat. ch. 735 § 12–1006 (Smith–Hurd 1998) and Ohio Rev.Code Ann. § 2329.66(A)(10) (Baldwin 1999). Unfortunately, there are no decisions which have interpreted this language.

The annuities in this case are "single premium deferred annuity contracts." Under this type of annuity contract, the annuitant pays one premium and is guaranteed a return over a number of years (depending upon which of several options the annuitant selects).[5] When the annuitant becomes 59½ years old, the entire amount of the annuity can be withdrawn without any tax penalty. Before then, however, there is a 10% tax penalty on any early withdrawals. Mr. Bogue was 58 years old when he purchased these annuities.

Certain tax benefits are afforded to single premium deferred annuitants, provided such annuity contract has the mandatory requirements contained in IRC § 72(s)(1). If these requirements are in the annuity contract, all income which accumulates on the annuity contract is excluded from the annuitant's annual gross income until received by the annuitant. IRC §§ 401–409 afford other tax benefits to the holders of certain specified types of annuities, provided these annuities comply with the IRC provisions in §§ 401–409. If there is com-

---

**4.** IRC § 72(s)(1) states:

**In general**—A contract shall not be treated as an annuity contract for purposes of this title unless it provides that—

(A) if any holder of such contract dies on or after the annuity starting date and before the entire interest in such contract has been distributed, the remaining portion of such interest will be distributed at least as rapidly as

under the method of distributions being used at the date of his death, and

(B) if any holder of such contract dies before the annuity starting date, the entire interest in such contract will be distributed within 5 years after the death of such holder.

**5.** The record in this case does not reveal which option the debtor selected.

pliance with IRC §§ 401–409, the annuitant is permitted to claim income tax deductions with respect to contributions up to a maximum amount in the year in which such contributions are made. The only types of annuities which qualify for this tax benefit are individual retirement annuities (under IRC § 408(b)) and employee annuities (under IRC §§ 403(a) and (b)). These are known as "qualified" annuities. Neither of these types of annuities are involved in the case at bar.

The single premium deferred annuities in this case are "non-qualified" annuities, and IRC §§ 401–409 do not have any bearing on them. That does not mean that because they are "non-qualified" they cannot be claimed as exempt under the Wisconsin exemption law. The Wisconsin retirement benefits exemption statute is couched in very broad terms. It includes "individual retirement annuities," but it also includes "any ... annuity," a much broader term. The Wisconsin retirement benefits exemption statute does not limit its application to "traditional" retirement plans, "qualified" annuities, or annuities which comply with IRC §§ 401–409.

The only provision of the Internal Revenue Code having any bearing upon the single premium deferred annuity is IRC § 72. The two annuities in this case do have the prerequisite provisions necessary to comply with IRC § 72. This, in turn, provides these annuities with tax-deferred status and is also sufficient to satisfy subsection 2(a) of the Wisconsin retirement benefits exemption statute.

 This court is persuaded that the intent of this statute is that it be afforded an expansive construction. This conclusion is borne out by a review of the legislative history to the current Wisconsin retirement benefit exemption statute. Where, as in this case, the statute is unclear as to its meaning or how it is to be applied, the legislative history is instruc-

tive. *In re United States Leather, Inc.,* 98–24997 (Bankr.E.D.Wis. June 15, 1999). R Arthur Ludwig, the chairman of the subcommittee of the Bankruptcy, Insolvency & Creditors' Rights Section of the State Bar of Wisconsin which was formed to review and propose revisions to the Wisconsin exemptions,[6] made the following comment regarding the revised exemptions:

> The revision is intended to broaden the areas and items that are now exempt under current law. . . . [W]hile retaining the language of the current statute and thereby not excluding "non-qualified" plans. The statute will now extend to Individual Retirement Accounts, 401–K's and similar plans or contracts.

*Wisconsin Exemption Statutes–Legislative Update, Annual Bankruptcy Update,* (State Bar of Wisconsin) October 1990, at Shapiro–30. Chairman Ludwig, on behalf of his subcommittee, also responded to a comment made that expansion of the retirement benefits exemption was too broad:

> The Committee's position is that today's environment and attitude of the average wage earner considers what, if any, retirement benefits he may have or be able to obtain. It was therefore felt that to include the other savings vehicles was fair and reasonable under the circumstances.

Letter from R Arthur Ludwig, chairman of the Committee on Wisconsin Exemptions Provisions of the Wisconsin State Bar Bankruptcy, Insolvency and Creditors' Rights Section, to those who commented on the proposed revisions (Nov. 9, 1989) (contained in Legislative History to S.B. 259). These comments demonstrate an intent to give a broad interpretation to the current statute.

This court rejects the trustee's contention that the Wisconsin legislature could

---

**6.** As an aside, both the writer of this decision and Trustee Esser were members of this sub- committee.

not have intended to create an unlimited retirement exemption. Some retirement benefits do contain specific limitations. For example, retirement benefits pursuant to an "owner dominated plan" are limited to "the extent reasonably necessary for the support of the debtor and the debtor's dependents." Wis.Stats. § 815.18(3)(j)(2). Here, however, there is no specific monetary limitation in the Wisconsin exemption law dealing with annuities, and it is not the court's role to rewrite a statute. *See* Felix Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Colum.L.Rev. 527, 533–34 (1947).

This does not mean that single premium deferred annuity contracts are unbridled for exemption purposes. Wis.Stats. § 815.18(10) authorizes the court to police abusive practices in claiming exemptions. Each case must be viewed in the light of its own particular facts and circumstances. That is consistent with the following comments of Chairman Ludwig's subcommittee:

> It was recognized that a debtor could abuse this exemption by making substantial last minute deposits to a Retirement Fund, and it was felt that if such an abuse is evident, it is not exempt. It was recognized that the Wisconsin Law, also acknowledged in cases decided under the Bankruptcy Code, that one may, in good faith transfer non-exempt assets to exempt assets and it is intented[sic] that that philosophy not be abused.

Bankruptcy, Insolvency & Creditors' Rights Section of the State Bar of Wisconsin, *Report of the sub-committee appointed for purposes of reviewing the present Wisconsin statutes to consider the amendments thereof, Annual Bankruptcy Update,* (State Bar of Wisconsin) October 1990, at Shapiro–54.

■ The scope of a state exemption is determined by state law. *Norwest Bank Nebraska NA v. Tveten,* 848 F.2d 871, 873 (8th Cir.1988). It is well settled that the Wisconsin exemption laws are liberally construed. *See In re Woods,* 59 B.R. 221, 224 (Bankr.W.D.Wis.1986); *Julius v. Druckrey,* 214 Wis. 643, 254 N.W. 358 (1934); *Folschow v. Werner,* 51 Wis. 85, 7 N.W. 911 (1881); *Krueger v. Pierce,* 37 Wis. 269 (1875); *Heath v. Keyes,* 35 Wis. 668 (1874); *Eloff v. Riesch,* 14 Wis.2d 519, 111 N.W.2d 578 (1961); and *Comstock v. Bechtel,* 63 Wis. 656, 662, 24 N.W. 465 (1885). This policy is also reflected in Wis.Stats. § 815.18.[7]

Two 1998 decisions from other districts with conflicting results, *In re Eilbert,* 162 F.3d 523 (8th Cir.1998), and *In re Alexander,* 227 B.R. 658 (Bankr.N.D.Tex.1998), have some bearing upon the issue at hand, although neither is directly on point. *Eilbert* involved an Iowa exemption.[8] Although it is modeled after the federal exemption 11 U.S.C. § 522(d)(10)(E), the Iowa exemption makes no reference to any provisions of the Internal Revenue Code and thus does not answer the question before this court. *Eilbert* disallowed a claimed exemption in a $450,000 single premium variable annuity which was pur-

---

**7. 815.18 Property exempt from execution. (1) STATUTORY CONSTRUCTION.** This section shall be construed to secure its full benefit to debtors and to advance the humane purpose of preserving to debtors and their dependents the means of obtaining a livelihood, the enjoyment of property necessary to sustain life and the opportunity to avoid becoming public charges.

**8.** Iowa Code Ann. § 626.6(8)(e) states:

A debtor who is a resident of this state may hold exempt from execution ... the debtor's rights in:

(e) A payment or a portion of a payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, unless the payment or a portion of the payment results from contributions to the plan or contract by the debtor within one year prior to the filing of a bankruptcy petition, which contributions are above the normal and customary contributions under the plan or contract, in which case the portion of the payment attributable to the contributions above the normal and customary rate is not exempt.

chased by a 74-year old debtor for the purpose of using a subsequent bankruptcy to free these proceeds from the claim of a judgment creditor. In rejecting this claimed exemption, the court referred to the annuity as "a purely generic term which refers to the method of payment and not to the underlying nature of the asset." 162 F.3d at 526.

The term "annuity" as used in the Wisconsin exemption statute and unlike the meaning which *Eilbert* gave to this term in the Iowa exemption statute is more than a "method of payment." It is as much a type of retirement benefit as are the other types specified in Wis.Stats. § 815.18(3)(j). The Wisconsin retirement exemption statute is considerably broader than the Iowa retirement exemption statute which exempts "a pension, annuity, or similar plan or contract...."The Wisconsin statute contains more sweeping language which includes not only the types of retirement benefits in the Iowa statute but also exempts "disability benefits, death benefits, stock bonuses, profit sharing plans, individual retirement accounts, individual retirement benefits, Keogh, and 401–k." Moreover, the facts in *Eilbert* are considerably different than those in the case at bar. In *Eilbert*, the debtor was 74 years old when she obtained her annuity. In the case at bar, the debtor was much younger—58 years old—when he purchased the annuities. Also, the amounts of the annuities ($450,000 in *Eilbert* and $17,800 in the case at bar) may have influenced the court's decision.

*Alexander* involved a Texas statute in which the debtors were claiming an exemption in a $350,000 single premium annuity was not a retirement benefit but was obtained as part of a structured settlement arising out of a personal injury claim in which two of the debtors' children were killed in an automobile accident. The exemption claimed in *Alexander* arose under Texas Insurance Code Article 21.22 [9] and, like the Iowa exemption in *Eilbert*, also made no reference to any of the provisions of the Internal Revenue Code. The court in *Alexander* allowed the exemption and rejected the trustee's contention that "under the terms of the settlement agreement, the debtors are creditors of the defendants and that the annuity is simply a method of securing the obligation of the defendants to the debtors created in the settlement agreement." 227 B.R. at 660. The court emphasized that, in Texas, there was no limitation on the term "annuity." *Id.* at 661 The court in *Alexander* observed that, at the time the annuity was issued, the debtor-husband was 40 years old and his wife was 41 years old. This may well have played a key role in the court's ruling.

*In re Bruski*, 226 B.R. 422 (Bankr. W.D.Wis.1998), a Wisconsin case with very similar facts supports the debtors' position. In *Bruski*, the debtors claimed as exempt a $16,000 deferred annuity which had been obtained only a few weeks before the annuitants filed for bankruptcy. The amount of the annuity in *Bruski* is reasonably close to the aggregate $17,800 amount of the two annuities in the case at bar. Judge Utschig, in *Bruski*, allowed the exemption and declared:

> The statute states that "any" annuity is exempt as long as it complies with the internal revenue code. The trustee con-

---

**9.** Texas Insurance Code Article 21.22 reads as follows:

[A]ll money or benefits of any kind, including policy proceeds and cash values, to be paid or rendered to the insured or any beneficiary under any policy of insurance *or annuity contract* issued by a life, health or accident insurance company, including mutual and fraternal insurance, or under any plan or program of annuities and benefits in use by any employer *or individual*, shall:

---

(2) be fully exempt from execution, attachment, or garnishment or other process; [and]

---

(4) be fully exempt from all demands in any bankruptcy proceeding of the insured or beneficiary.

tends that since all income is taxed in accordance with the code, the legislature must have intended to incorporate the restrictions of sections 401–409 by the reference to compliance. But this argument proves too much. It is not whether the annuity is taxable in accordance with the code, but whether the tax is deferred in accordance with the code. If so, the annuity qualifies for the exemption.

*In re Bruski,* 226 B.R. at 424.

This court concludes that the annuities purchased by Mr. Bogue in this case do "comply with the provisions of the internal revenue code" within the meaning of Wis. Stats. § 815.18(3)(j)(2)(a).

### Do the Annuities Provide Retirement Benefits "By Reason of Age"?

■ The trustee also argues that, in order to acquire exemption status, these annuities must provide benefits "by reason of age, illness, disability, death or length of service." He then concludes that the annuities in this case "fail to meet any of these requirements." The focus in this case is upon the meaning of the phrase "by reason of" in Wis.Stats. § 815.18(3)(j). Does this mean that the debtor purchased these annuities "because of" his age (in this case, 58 years) in order to provide him with a supplemental source of income or a replacement income, recognizing that at that stage of life he could soon become either entirely unemployed or be working less than full time? This certainly is one reasonable interpretation of this phrase, which, if adopted, would result in these annuities being eligible for exemption since it merely explains why the annuities were acquired. Another possible interpretation of this phrase "by reason of" means that the annuities can only be distributed upon the annuitant reaching a specified age or upon death. Under this interpretation, the annuities in this case would not be eligible to be claimed exempt. That is because distribution of the benefits is tied to a fixed term—one year—not to "age, illness, disability, death, or length of ser-

vice." "By reason of," like the phrase "on account of" (which latter phrase appears in both the Iowa exemption statute and in the federal exemption 11 U.S.C. § 522(d)(10)(E)), can have more than one meaning attributable to it. In *In re Cilek,* 115 B.R. 974, 998 (Bankr.W.D.Wis.1990), the court recognized that "on account of" is capable of several interpretations. Recently, the U.S. Supreme Court in *Bank of Am. Nat'l Trust & Savings Assoc. v. 203 North LaSalle St. Partnership,* 526 U.S. 434, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999), also declared that several meanings can be attributed to the phrase "on account of," although the court found it unnecessary to chose between the different meanings in reaching its decision in that case. The phrases "on account of" and "by reason of," while similar to each other, are nonetheless ambiguous. In *Cilek,* the court, mindful of the maxim that exemption statutes are to be liberally construed, held that "on account of" modified only the word "contract," which immediately preceded it, but did not modify the other retirement benefits in the statute, including annuities.

This court, therefore, concludes that the phrase "by reason of" should be afforded an interpretation which permits the annuities to be granted exemption status under Wis.Stats. § 815.18(3)(j).

Granting the annuities in this case exemption status is consistent with the underlying intent of this statute as noted in the response of Chairman Ludwig in his November 9, 1998 letter to an inquiry of whether a retirement benefit plan must be required to meet all of the requirements set forth in the opening paragraph of Wis. Stats. § 815.18(3)(j):

> The Committee in its early deliberations discussed this point exhaustively. It was the Committee's position that all of the requirements of the opening paragraph need not be met in order that a retirement benefit be exempt. It was the Committee's view that if a small company desired to create a Retirement

Benefit Plan without it being approved by the respective governmental agencies, it had a right to do so, and that the benefits derived therefrom should be exempt.

### Relationship to Wis.Stats. § 701.06(6)

The trustee further argues that permitting the annuities in this case to be declared exempt would render Wis.Stats. § 701.06(6) meaningless.[10] This provision is intended to prohibit self-settled spendthrift trusts, and the trustee's argument fails for two reasons: (1) this case does not involve any self-settled spendthrift trust and (2) the powers afforded this court under Wis.Stats. § 815.18(10) to curtail abusive practices in claiming exemptions provide a safeguard against any attempt to circumvent Wis.Stats. § 701.06(6).

### Impact of Wis.Stats. § 815.18(10)

■ The final issue is whether the annuities, even if exempt, must be denied exemption status under Wis.Stats. § 815.18(10) as having been procured, concealed, or transferred with the intention of defrauding creditors.

As previously stated, the parties have stipulated that the two annuities were purchased in contemplation of bankruptcy and with the intent of being claimed as exempt in their bankruptcy schedules. The stipulation also recites that the funds used to purchase the annuities would not have been able to be claimed as exempt under either Wisconsin or federal exemptions. The question is whether these stipulated facts require a finding by this court of a fraudulent transfer, resulting in disqualification of exemption status.

10. § 701.06. Spendthrift provisions and rights of creditors of beneficiaries.

---

(6) SETTLOR AS BENEFICIARY. Notwithstanding any provision in the creating instrument and in addition to the remedies available under subs (4) and (5) where the settlor is a beneficiary, upon application of a judgment creditor of the settlor, the court may, if the terms of the instrument require

The controlling authority on this issue in the Seventh Circuit is in *In re Smiley*, 864 F.2d 562 (7th Cir.1989). *Smiley* dealt with the issue of whether such conduct on the part of the debtors gives rise to a basis for denial of discharge, but that same reasoning applies on the issue of exemption disallowance. *Smiley* concluded that the conversion of assets from non-exempt to exempt forms within a year preceding a petition in bankruptcy is not necessarily fraudulent to creditors. *Id.* at 566. *Smiley* declared that, in order to find fraudulent intent, a court must look to "extrinsic signs of fraud," including:

(1) that the debtor obtained credit in order to purchase exempt property; (2) that the conversion occurred after the entry of a large judgment against the debtor; (3) that the debtor had engaged in a pattern of sharp dealing prior to bankruptcy; and [(4)] that the conversion rendered the debtor insolvent.

*Id.* at 567 (citation omitted). None of these "extrinsic signs of fraud" have been shown to exist in the case at bar.

■ There are other factors a court may consider in deciding whether there was fraud on the part of the debtor in connection with a conversion of assets from non-exempt to exempt forms, none of which is necessarily controlling. These include:

1. *Amount of Exemption.* In this case $17,800 is involved. This is not an exorbitant amount.

2. *Proximity of Time of Conversion to Time of Filing for Bankruptcy.* Clearly, the two annuities were obtained only a matter of days before the filing of bankruptcy.

or authorize the trustee to make payments of income or principal to or fore the benefit of the settlor, order the trustee to satisfy part or all of the judgment out of part or all of the payments of income or principal as they are due, presently in the future, or which are payable in the trustee's discretion, to the extent in either case of the settlor's proportionate contribution to the trust.

3. *Source of Funds Used to Acquire Exempt Property.* The funds used by the debtors to purchase the annuities were not "tainted." This is not a case of debtors borrowing money to purchase exempt property and then selling the assets and using the sale proceeds to acquire exempt annuities. This is also not a case of debtors obtaining funds by theft and then converting the funds into exempt property.

4. *Misleading Contacts with Creditors by Debtors While in the Process of Converting the Assets from Non-exempt to Exempt Status.* In *Smiley,* the debtor made active efforts to hide the proposed conversion of assets from his creditors while he was scrambling to liquidate the assets and then convert them into an unlimited homestead exemption in Kansas. The debtor in *Smiley* also made misrepresentations to his creditors. No misrepresentations or concealment exist in the case at bar.

5. *Purpose of the Conversion of Assets.* Here, the purpose was two-fold. While the debtors intended to shield these funds from their creditors, at the same time they were seeking to create a retirement fund for their future. Mr. Bogue was 58 years of age when he acquired the two annuities. It is not unreasonable for a person at that stage in life to be planning for retirement.

6. *Conveyances for Less Than Fair Consideration.* The funds used to purchase the annuities originated from the sales of assets to non-insiders for fair consideration. In fact, it appears that, had the sales of the real and personal property had not taken place, the debtors, upon filing for bankruptcy, could have claimed the bulk of these assets as exempt.

■ In 1982, in *In re Vissers,* 21 B.R. 638 (Bankr.E.D.Wis.1982), this court, referring to the debtor's action in converting a non-exempt note receivable into an exempt homestead, observed:

> There is nothing improper in [doing this], and such action by a debtor on the eve of bankruptcy is approved.

This court continues to adhere to the view that pre-bankruptcy planning alone does not, per se, establish a fraudulent intent. *Hanson v. First National Bank in Brookings,* 848 F.2d 866, 868 (8th Cir.1988), states:

> It is well established that under the Code, a debtor's conversion of non-exempt property to exempt property on the eve of bankruptcy for the express purpose of placing that property beyond the reach of creditors, without more, will not deprive the debtor of the exemption to which he otherwise would be entitled.

More needs to be shown. It has not been shown here.

### *Conclusion*

Bankruptcy Rule 4003(c) of the Federal Rules of Bankruptcy Procedure places the burden of proof upon the objecting party to establish that exemptions have not been properly claimed. That burden has not been met in this case, and the trustee's objection to the debtors' claimed exemption in the two annuities is **DENIED.**

This decision constitutes the court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52 of the Federal Rules of Civil Procedure.