T.C. Memo. 2008-269

UNITED STATES TAX COURT

MARCUS A. KATZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5847-06.                    Filed December 3, 2008.

<u>Charles E. Hodges II</u> and <u>David D. Aughtry</u>, for petitioner.

<u>John W. Sheffield III</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  After stipulations and concessions, the issues for decision are whether petitioner is entitled to defer recognition of capital gain relating to the transfer of appreciated property in exchange for a private annuity and

whether petitioner is liable for a section 6662(a)[1] accuracy-related penalty.

FINDINGS OF FACT

Most of the facts have been stipulated and are so found. In 1993, petitioner started Educational Loan Administrative Group, Inc. (ELA), a California-based student loan business. In 1997, UICI Acquisition Corp., a subsidiary of UICI (UICI), a publicly traded company, acquired ELA in a merger transaction in which petitioner received 470,708 shares of UICI restricted stock in exchange for his stock in ELA. In January 1998, petitioner, in an effort to hedge some of the UICI shares, purchased from Merrill, Lynch, Pierce, Fenner & Smith (Merrill Lynch) 200,000 UICI common stock put options (put options) and sold Merrill Lynch 200,000 UICI common stock call options (equity swap transaction). The respective strike prices for the put and call options were $23.09 and $26.93 per share. The options were European-style options which, after agreed upon extensions, could be exercised only on February 3, 2000.

In December 1999, petitioner, as a part of his retirement planning, began negotiations with Merrill Lynch and Philip Langridge, a successful Canadian businessman, to exchange the

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

equity swap transaction for a private annuity contract. On January 11, 2000, Mr. Langridge's wholly owned company, SJA Company, Ltd. (SJA), was incorporated in the Bahamas as an international business company.

On February 3, 2000, the date the rights under the equity swap transaction were due to expire, petitioner entered into a single lump-sum private variable annuity contract with SJA (private annuity contract) and an assignment agreement with Merrill Lynch and SJA.[2] Pursuant to the agreements, petitioner transferred 200,000 UICI shares of common stock and the put options to SJA in exchange for a private annuity. The private annuity contract provided that neither petitioner nor his family would receive any annuity payments if petitioner died before age 65. On February 3, 2000, after receiving the UICI shares and put options, SJA notified Merrill Lynch that it was delivering the UICI shares to Merrill Lynch and exercising the put options at the agreed strike price.

On February 8, 2000, Merrill Lynch settled the sale of the UICI shares and purchased the shares from SJA for $4,617,841 (UICI stock sale). Pursuant to the private annuity contract and assignment agreement, SJA was the owner of the proceeds from the

---

[2] To protect its interests, Merrill Lynch required the equity swap transaction to be transferred by an assignment agreement in which Merrill Lynch was the "counterparty", petitioner was the assignor, and SJA was the assignee.

UICI stock sale. Merrill Lynch, however, deposited the proceeds from the UICI stock sale in petitioner's non-interest-bearing Merrill Lynch account. Upon discovery of the error, petitioner immediately notified Merrill Lynch and Mr. Langridge. Merrill Lynch informed petitioner and Mr. Langridge that the proceeds had been temporarily placed in petitioner's account because SJA had not yet established a Merrill Lynch account. Petitioner and Mr. Langridge agreed that, pursuant to the private annuity contract, petitioner would keep $800,000 of the UICI stock sale proceeds erroneously deposited into petitioner's account.

In an attempt by petitioner, Merrill Lynch, and SJA to correct the error, on May 8, 2000, $3,817,841 (i.e., the UICI stock sale proceeds minus the $800,000 retained by petitioner) was transferred from petitioner's Merrill Lynch account to an account owned by SJA. Merrill Lynch subsequently issued petitioner a Form 1099-B, Proceeds From Broker and Barter Exchange Transactions, which indicated that petitioner received $4,617,841. Petitioner timely filed his 2000 Federal income tax return, on which he disclosed receipt of the Form 1099-B, indicated that he was a "nominee" for SJA, and reported a basis in the UICI shares of $4,617,841. Petitioner had a basis of $150,650 in the UICI shares, yet reported a basis of $4,617,841 in an attempt to address the Merrill Lynch error and offset the amount reported on the Form 1099-B. In a notice of deficiency

dated December 22, 2005, respondent determined a $920,813 deficiency in petitioner's Federal income tax and a $184,163 section 6662(a) accuracy-related penalty relating to 2000. On March 23, 2006, petitioner, while residing in California, filed his petition with the Court.

OPINION

We must determine whether petitioner is entitled to defer recognition of capital gain relating to the transfer of the UICI shares in exchange for the private annuity (the transfer). Pursuant to Rev. Rul. 69-74, 1969-1 C.B. 43, 43-44, when a taxpayer exchanges appreciated property for a private annuity, "[t]he gain should be reported ratably over the period of years measured by the annuitant's life expectancy and only from that portion of the annual proceeds which is includible in gross income by virtue of the application of section 72." Thus, a taxpayer who exchanges appreciated property for a private annuity is entitled to defer recognition of capital gain relating to the appreciated property until the taxpayer receives annuity payments. Petitioner concedes that he is not entitled to defer recognition of capital gain relating to the $800,000 that he retained, but contends that he is entitled to defer recognition of any other capital gain relating to the transfer. Respondent contends that "[t]he facts show the transaction was not an exchange of appreciated property for a private annuity because

petitioner completely orchestrated the simultaneous stock sale and private annuity purchase in an attempt to unlawfully defer capital gains under I.R.C. § 72." We disagree.

Regarding the form and substance of the transactions, the parties stipulated:

> 39. Mr. Katz is not related to Mr. Langridge and neither Mr. Katz nor any member of his family has any direct or indirect ownership interest, control, or position of responsibility in SJA or any other company owned by Mr. Langridge. Neither Mr. Katz nor Mr. Langridge hold any direct or indirect ownership interest, control, or positions of responsibility in Merrill Lynch.
>
> \* \* \* \* \* \* \*
>
> 49. The terms in the Private Annuity Contract meet the requirements of Rev. Rul. 69-74, 1969-1 C.B. 43 and I.R.C. section 72 subject to Respondent's substance-over-form position.
>
> \* \* \* \* \* \* \*
>
> 50. Subject to Respondent's substance-over-form position, the Private Annuity Contract is a valid private annuity in which the manner of taxation of the annuity payments to Mr. Katz received after he reaches age 65 is as provided by Rev. Rul. 69-74, 1969-1 C.B. 43 and I.R.C. Section 72.
>
> \* \* \* \* \* \* \*
>
> 54. Mr. Katz irrevocably transferred, conveyed, and assigned the 200,000 shares of UICI common stock and 200,000 UICI put options to SJA on February 3, 2000 before the exercise of the put options on February 3, 2000.
>
> \* \* \* \* \* \* \*
>
> 58. Mr. Langridge's company, SJA, was the owner of the 200,000 UICI shares and the put options and was the owner of the proceeds from the settlement of the

sale of the 200,000 UICI shares pursuant to the
exercise of the put options, subject to the Private
Annuity Contract.

> * * * * * * *

80. Respondent does not assert the Equity Swap
Transaction, the Private Annuity Contract, or any
agreement entered into between Mr. Katz and Philip
Langridge on behalf of SJA or between Mr. Katz, Philip
Langridge on behalf of SJA, and Merrill Lynch was a
"sham" for federal tax purposes or was entered into
for the purpose of improperly avoiding any federal
taxes. The parties thus agree the allegations and
issues asserted in paragraph 8 of the Answer[3] should
be disregarded.

Stipulations are treated as conclusive and binding admissions
by the parties unless otherwise permitted by the Court. Rule
91(e); Petaluma FX Partners, LLC v. Commissioner, 131 T.C. ___,
___ (2008) (slip op. at 9). Thus, the parties agree and the
evidence establishes that the private annuity contract was a
valid agreement, the form of the private annuity contract met the
requirements of Rev. Rul. 69-74, supra, petitioner transferred
the options to SJA before the options were exercised, SJA was the
owner of the proceeds from the UICI stock sale, and the
transactions were not entered into for the purpose of avoiding
Federal income taxes. Undaunted by stipulations that effectively

---

[3] In paragraph 8 of his answer, respondent asserted that
"petitioner's purported purchase of an annuity from SJA in the
year 2000 is a sham transaction, devoid of economic substance."

eviscerate any plausible challenge to the form and substance of the transactions, respondent inexplicably contends:

> The fundamental issue in this case is whether there was really a trade of 200,000 shares of UICI stock put options or the equivalent for a private annuity that would cause deferral of the resulting capital gains under I.R.C. § 72. * * *

> The facts show the transaction was not an exchange of appreciated property for a private annuity because petitioner completely orchestrated the simultaneous stock sale and private annuity purchase <u>in an attempt to unlawfully defer capital gains under I.R.C. § 72. This is respondent's form over substance argument</u>.

There is no credible evidence supporting respondent's position.[4] On the one hand, respondent contends petitioner was "attempting to unlawfully defer capital gains". While on the other hand, respondent stipulated that "respondent does not assert [that the transaction or any agreement] was a 'sham' for federal tax purposes or was entered into for the purpose of improperly avoiding any federal taxes." In short, respondent stipulated away the underpinnings of his "form over substance" contention. Accordingly, petitioner, with the exception of the $800,000 that he retained, is entitled to defer recognition of capital gain relating to the transfer.

---

[4] Pursuant to sec. 7491(a), petitioners have the burden of proof unless they introduce credible evidence relating to the issue that would shift the burden to respondent. See Rule 142(a). Our conclusion, however, is based on a preponderance of the evidence, and thus the allocation of the burden of proof is immaterial. See <u>Martin Ice Cream Co. v. Commissioner</u>, 110 T.C. 189, 210 n.16 (1998).

We note that respondent, in an unconvincing attempt to salvage his "form over substance" contention, cites Usher v. Commissioner, 45 T.C. 205 (1965). Usher is distinguishable. In Usher, the taxpayer, who had previously entered into a binding agreement to sell shares to a specified entity, created a trust with her children listed as the beneficiaries and on the same date transferred the shares to the trust in exchange for an annuity. Id. at 209-210. The trust then sold the shares in accordance with the preexisting agreement. Id. at 212. The Commissioner contended and proved that in substance the stock sale was completed by the taxpayer, and the trust, to which the taxpayer's family members were beneficiaries, was a mere conduit. Id. at 214, 216. In the present case, however, SJA was not a mere conduit. In fact, respondent stipulated that petitioner entered into a private annuity contract with SJA, petitioner had no direct or indirect interest in SJA or Merrill Lynch, SJA owned the UICI shares at the time they were sold, Merrill Lynch erroneously deposited the funds from the UICI stock sale into petitioner's account, and the transactions were valid transactions not entered into for the purpose of improperly avoiding taxes. Moreover, in Usher, the taxpayer's transaction was not sanctioned by one of the Commissioner's revenue rulings. Whereas in the present case, petitioner's transactions met the requirements of Rev. Rul. 69-74, supra.

We must also determine whether petitioner is liable for the section 6662(a) accuracy-related penalty relating to 2000. Section 6662(a) provides for an accuracy-related penalty equal to 20 percent of the underpayment of tax if the underpayment is due to one of the reasons listed in section 6662(b). Respondent bears, but has failed to meet, the burden of production relating to the section 6662(a) penalty. Sec. 7491(c); <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001). Petitioner received $800,000 in proceeds from the UICI stock sale. Respondent, however, conceded that petitioner is entitled to $827,313 of previously disallowed ordinary business expense deductions. Thus, there is no underpayment. Accordingly, petitioner is not liable for the section 6662(a) accuracy-related penalty.

Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decision will be entered</u>
<u>under Rule 155</u>.