In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 13-1123 & 13-1516

IN RE: LEONARD D. BRONK,

*Debtor.*

JOHN M. CIRILLI, Trustee,

*Plaintiff-Appellee/Cross-Appellant*,

*v.*

LEONARD D. BRONK,

*Defendant-Appellant/Cross-Appellee*.

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 11-cv-172-wmc — **William M. Conley**, *Chief Judge*.

ARGUED SEPTEMBER 19, 2013 — DECIDED JANUARY 5, 2015

Before MANION, KANNE, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. This bankruptcy appeal raises two questions of first impression under a Wisconsin statute that permits resident debtors to shield certain property from execution by creditors. *See generally* 11 U.S.C. § 522(b); WIS.

STAT. § 815.18. The first question concerns the scope of the statutory exemption for state-qualified college savings accounts. *See* WIS. STAT. § 815.18(3)(p) (exempting "[a]n interest in a college savings account under s. 16.641"). The bankruptcy judge read the statute narrowly to cover only the interest of account *beneficiaries*, not account *owners*, and refused to allow the debtor to exempt from his bankruptcy estate five college savings accounts he had established for the benefit of his grandchildren. The district court affirmed this ruling, and the debtor appeals this aspect of the judgment.

Wisconsin's exemption statute also protects certain retirement benefits, *see id.* § 815.18(3)(j), as well as life-insurance and annuity contracts, *see id.* § 815.18(3)(f). But the exemption for life insurance and annuities is limited to $4,000 if the contract in question was issued less than 24 months before the exemption is claimed. *Id.* § 815.18(3)(f)3. The debtor purchased an annuity just a few months before filing his bankruptcy petition and claimed a full exemption for it under section 815.18(3)(j). The Chapter 7 trustee argued that the annuity didn't qualify as a "retirement benefit" under section 815.18(3)(j) and the debtor could claim only the $4,000 exemption allowed under section 815.18(3)(f)3. The bankruptcy judge rejected the trustee's argument, classified the annuity as a retirement benefit, and allowed the exemption in full. The district court affirmed, and the trustee cross-appeals this aspect of the judgment.

We reverse in part and affirm in part. The college savings accounts are exempt from execution under section 815.18(3)(p). Account owners, not just account beneficiaries, may claim this

exemption, and the lower courts erred in disallowing it here. As for the annuity, the contract in question satisfies the basic definition of an exempt "retirement benefit" under section 815.18(3)(j)1, which broadly includes "[a]ssets held or amounts payable under any … annuity … or similar plan or contract providing benefits by reason of age, illness, disability, death, or length of service." The debtor's annuity provides a death benefit, so the lower courts properly allowed him to exempt it in full under section 815.18(3)(j).

We note, however, that to qualify as a fully exempt retirement benefit under section 815.18(3)(j), the plan or contract in question must be either employer sponsored or comply with the Internal Revenue Code. *See* § 815.18(3)(j)2. The annuity clearly is not employer sponsored; whether it complies with the Internal Revenue Code has not been established, but the trustee raised this issue far too late in the proceedings and so it is waived.

## I. Background

Leonard Bronk is a retiree living in Stevens Point, Wisconsin. He incurred significant debts providing for his wife's medical care before her death in 2007, and he himself suffered a stroke in early 2009. With his medical debts mounting—they exceeded $345,000 by the time he filed for bankruptcy—Bronk sought the advice of an attorney about pre-bankruptcy exemption planning. His assets included his home, which he owned free and clear, and a certificate of deposit in the amount of $42,000. On the advice of counsel, Bronk sought to protect these nonexempt assets by converting them to exempt assets.

In May 2009, a few months before filing his Chapter 7 petition, Bronk borrowed $95,000 from Citizens Bank and mortgaged his previously unencumbered home. He used these funds to establish five college savings accounts for the benefit of his grandchildren under section 529 of the Internal Revenue Code. That section enables states to create "qualified tuition program[s]" in the form of prepaid tuition plans and college savings accounts that enjoy favorable federal tax treatment. I.R.C. § 529(b). Wisconsin has enacted legislation creating both. *See* WIS. STAT. § 16.641 (college savings accounts); *id*. § 16.64 (prepaid tuition plans).[1]

Account owners control the funds in these accounts (known as "Edvest" accounts) and may designate and change account beneficiaries. § 16.641(1), (3); *see also* EDVEST, PLAN DISCLOSURE BOOKLET AND PARTICIPATION AGREEMENT I-2 (Oct. 29, 2012), *available at* https://www.edvest.com/documents/wi_ disclosure.pdf ("[The account owner] may cancel th[e] [Edvest Participation] Agreement at any time by requesting a 100% distribution from [his or her] Account."). Beneficiaries do not control account assets. *See* WIS. ADMIN. CODE ADMIN. § 81.11(3) ("A designated beneficiary may not authorize distribution or withdrawal of account funds."); *see also* Susan T. Bart, *The Best of Both Worlds: Using a Trust to Make Your 529 Savings Accounts Rock*, 34 ACTEC J. 106, 111 n.31 (2008) ("[U]nless the beneficiary is the account owner, the beneficiary has only a

---

[1] These statutes were renumbered during the pendency of this case. *See* 2011 Wis. Act 32 §§ 75–76. Section 16.641 (college savings accounts) was previously codified at section 14.64. Section 16.64 (prepaid tuition plans) was codified at section 14.63. We use the current statutory designations.

mere expectancy, and does not have any property interest to transfer.").

In addition to creating the college savings accounts using the equity in his home, Bronk converted the $42,000 certificate of deposit into an annuity with CM Life Insurance Company. The annuity contract was issued on May 4, 2009, and does not begin making payments until January 3, 2035, but it also includes a death benefit.

On August 5, 2009, Bronk filed for bankruptcy under Chapter 7. The trustee objected to the college-fund and annuity transactions, arguing that Bronk had transferred his property with the intent to hinder, delay, or defraud his creditors and thus should be denied a discharge. *See* 11 U.S.C. § 727(a)(2)(A). The trustee also lodged individual objections to the exemptions Bronk claimed for these converted assets. *See* WIS. STAT. § 815.18(10). To be more specific, Bronk sought an exemption for the college savings accounts under section 815.18(3)(p), which allows debtors to shield from creditors "[a]n interest in a college savings account." He also sought an exemption for the annuity under section 815.18(j), which shields certain qualifying retirement benefits from creditors. The parties submitted the case on stipulated facts.

The bankruptcy judge first addressed the trustee's argument for denial of discharge and rejected it, finding that there was no evidence that Bronk had acted with intent to hinder, delay, or defraud creditors. *See In re Bronk*, 444 B.R. 902, 908–17 (Bankr. W.D. Wis. 2011). Turning to the claimed exemptions, the bankruptcy judge interpreted section 815.18(3)(p)—the exemption for college savings accounts—as applying only to

the *beneficiary's* interest, not the account *owner's* interest, and on that understanding disallowed the claimed exemption for the Edvest accounts Bronk had established for his grandchildren. *Id.* at 918–24. But the judge accepted Bronk's argument about the annuity, holding that it was fully exempt as a retirement benefit under section 815.18(3)(j) rather than only partially exempt under section 815.18(3)(f)3, as the trustee had argued. *See id.* at 925–26.

Both sides appealed to the district court. The district judge vacated the bankruptcy court's decision while agreeing with most of its reasoning. First, the district judge agreed that Bronk was entitled to a discharge because the trustee had not proven that the asset transfers were made with intent to hinder, delay, or defraud creditors. That decision is not challenged on appeal, so we say no more about it here. Second, the district judge agreed with the bankruptcy judge's interpretation of section 815.18(3)(p) and upheld the decision to deny the claimed exemption for Bronk's Edvest accounts. Finally, the judge narrowed the bankruptcy court's interpretation of "retirement benefit" under section 815.18(3)(j) and remanded the case for additional fact-finding on whether the annuity qualified under the narrower understanding of the statute.

On remand the bankruptcy judge again held that the annuity was fully exempt as a retirement benefit under section 815.18(3)(j). A new judgment was entered, and Bronk again appealed to the district court to preserve issues previously decided for further review in this court. The parties appeared in the district court and advised the judge that no further proceedings were necessary. The district court then

issued a summary order denying the appeal while "preserving to the full extent possible the parties' previous challenges before the bankruptcy court and this court."[2]

Bronk appealed, challenging the disallowance of the exemption for his college savings accounts under section 815.18(3)(p). The trustee filed a cross-appeal challenging the court's ruling on the annuity.

## II. Discussion

The Bankruptcy Code allows debtors to exempt certain property from the bankruptcy estate under either federal law or the law of their state of residence. *See* 11 U.S.C. § 522(b); *In re Geise*, 992 F.2d 651, 653 n.4, 655–56 (7th Cir. 1993). As a Wisconsin resident, Bronk sought two exemptions available under state law, one for the college savings accounts under section 815.18(3)(p) and another for the annuity under section 815.18(3)(j).

---

[2] Bronk argues that we lack jurisdiction over the trustee's cross-appeal because he did not file a separate appeal in the district court from the bankruptcy court's ruling on remand. We disagree. Both sides have appealed from a judgment of the district court explicitly preserving all issues raised and decided in the case. We have jurisdiction over the final judgment of the district court, and "[t]he general rule is that an appeal from a final judgment allows the appellant to challenge any interlocutory actions by the district court along the way toward that final judgment." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1019 (7th Cir. 2013). The issues before us now were presented to and decided by the district court in its initial opinion, which became final and appealable upon entry of the final judgment after the case returned following remand to the bankruptcy court.

We begin with the text of Wisconsin's exemption statute, which provides in relevant part:

> **(3)** EXEMPT PROPERTY. The debtor's interest in or right to receive the following property is exempt … :
>
>  …
>
> (f) *Life insurance and annuities.* …
>
> 2. Except as provided in subd. 3. and par. (j), any unmatured life insurance or annuity contract owned by the debtor and insuring the debtor … and the debtor's aggregate interest, not to exceed $150,000 in value … .
>
> 3. a. If the life insurance or annuity contract was issued less than 24 months before the applicable date, the exemption under this paragraph may not exceed $4,000.
>
>  …
>
> (j) *Retirement benefits.* 1. Assets held or amounts payable under any retirement, pension, disability, death benefit, stock bonus, profit sharing plan, annuity, individual retirement account, individual retirement annuity, Keogh, 401–K or similar plan or contract providing benefits by reason of age, illness, disability, death or length of service and payments made to the debtor therefrom.

2. The plan or contract must meet one of the following requirements:

a. The plan or contract complies with the provisions of the internal revenue code.

b. The employer created the plan or contract for the exclusive benefit … of some or all of the employees, or their dependants or benefi-ciaries … .

…

(p) *College savings accounts*. An interest in a college savings account under s. 16.641.

§ 815.18(3).

The statute contains its own rule of construction: "This section shall be construed to secure its full benefit to debtors and to advance the humane purpose of preserving to debtors and their dependents the means of obtaining a livelihood, the enjoyment of property necessary to sustain life and the opportunity to avoid becoming public charges." WIS. STAT. § 815.18(1). Because this case presents questions of statutory interpretation, our review is de novo. *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 440 (7th Cir. 2010).

### A. The College Savings Accounts

Wisconsin's exemption statute allows debtors to exempt "[a]n interest in a college savings account under s. 16.641" from execution by creditors. § 815.18(3)(p). The term "interest" is not

specifically defined in the statute or by regulation,[3] but an "interest" is generally defined as "[a] legal share in something; all or part of a legal or equitable claim to or a right in property." BLACK'S LAW DICTIONARY 934 (10th ed. 2014). Bronk clearly has a legal interest in each of the Edvest college savings accounts. He owned the accounts and could at any time select and change beneficiaries, transfer funds between accounts, receive distributions from the accounts, and (subject to certain limitations) remove funds from the accounts. *See* § 16.641(3)(a)–(b). Indeed, if Bronk lacked a legal or equitable interest in the accounts, they would not have been part of the bankruptcy estate in the first place. *See* 11 U.S.C. § 541(a)(1) (including in the property of the estate "all legal or equitable interests of the debtor in property").

The trustee insists nonetheless that the statute is ambiguous and must be understood as simply incorporating by reference the exemption contained in section 16.641, the enabling statute for Wisconsin's Edvest program. Section 16.641 contains an exemption to protect the beneficiary's interests in a college savings account: "A beneficiary's right to qualified withdrawals under this section is not subject to garnishment, attachment, execution, or other process of law." § 16.641(7).

Both lower courts agreed with the trustee that section 815.18(3)(p) is ambiguous and thus embarked on an elaborate examination of legislative history and similar legislation in other states to determine the relationship between

---

[3] *See* WIS. STAT. § 815.18(2) (defining certain terms in the statute); *see also* WIS. ADMIN. CODE ADMIN. § 81.02.

the two exemptions. This foray into matters extrinsic to the statute led both judges to conclude that the general exemption in section 815.18(3)(p) covers only the *beneficiary's* interest in a college savings account, not the account *owner's* interest.

Venturing into legislative history was unnecessary, as was the search for guidance from other states. The presence of a beneficiary-specific exemption in section 16.641—the enabling statute for Wisconsin's college-savings program—does not mean that the general exemption in section 815.18(3)(p) is ambiguous. The general exemption statute is succinct and straightforward: A debtor may exempt "an interest in a college savings account under s. 16.641" from execution by creditors. The lower courts read this text as if it said that a debtor may exempt "[a]n interest in a college savings account *that is exempt* under s. 16.641." That reading adds language that is not there, making section 815.18(3)(p) superfluous—a mere duplication of the beneficiary-specific exemption in section 16.641(7).

The test for statutory ambiguity in Wisconsin looks to "whether the statutory … language *reasonably* gives rise to different meanings." *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 681 N.W.2d 110, 124 (Wis. 2004) (internal quotation marks omitted). And "[s]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." *Id.* The trustee finds ambiguity in section 815.18(3)(p) only by adding language and turning it into mere surplusage. That's not a reasonable interpretation of the statute.

The general exemption for college savings accounts in section 815.18(3)(p) would have no work to do if it is limited to

the *beneficiary's* interest in the account, which is separately protected by section 16.641(7). Indeed, the trustee's interpretation of section 815.18(3)(p) actually undermines the interests of college-fund beneficiaries, making section 16.641(7) ineffective. If account owners may not invoke the general exemption in section 815.18(3)(p), as the trustee suggests and the lower courts held, then a college savings plan can be reached by an account owner's creditors, impairing the beneficiary's right to qualified withdrawals.

The plain-meaning interpretation of section 815.18(3)(p) is the only reasonable one. It's the only reading of the statute that gives reasonable effect to both exemptions. The general exemption in section 815.18(3)(p) complements the more specific exemption in section 16.641(7), completing the protection for college savings accounts. Accordingly, we hold that section 815.18(3)(p) applies to an account owner's interest in a section 16.641 college savings account. Bronk was entitled under that section to exempt his interest in the Edvest accounts from the bankruptcy estate.

## B. The Annuity

The extent to which Bronk's annuity is exempt depends on how it is classified. The exemption statute defines "annuity" generally as "a series of payments payable during the life of the annuitant or during a specific period." WIS. STAT. § 815.18(2)(am). Two subsections in section 815.18 apply to annuities, though one is more limited than the other.

An annuity may be fully exempt as a "retirement benefit" under section 815.18(3)(j), which covers the following assets:

> Assets held or amounts payable under any retirement, pension, disability, death benefit, stock bonus, profit sharing plan, annuity, individual retirement account, individual retirement annuity, Keogh, 401–K or similar plan or contract providing benefits by reason of age, illness, disability, death or length of service and payments made to the debtor therefrom.

§ 815.18(3)(j)1. To qualify for full exemption under this subsection, the retirement plan or contract must meet one of two additional requirements: (1) it must be employer sponsored; or (2) it must comply with the Internal Revenue Code. § 815.18(3)(j)2.

A more general exemption applies to "life insurance and annuities," but only up to $150,000 in value.[4] § 815.18(3)(f)2. And if the annuity contract was issued less than 24 months prior to the date the exemption is claimed, the exemption is limited to $4,000. *See* § 815.18(3)(f)3.a.

Two criteria differentiate annuities covered under subsection (3)(j) from those under subsection (3)(f). The first is how benefits are paid. Subsection (3)(f) applies to "any unmatured … annuity," but the exemption for retirement benefits only covers annuities "providing benefits by reason of

---

[4] This subsection of the exemption statute initially covered only life insurance, but annuities were added in 2003. *See* 2003 Wis. Act 304.

age, illness, disability, death or length of service," § 815.18(3)(j)1. So to qualify for full exemption as a retirement benefit under subsection (3)(j), an annuity must distribute benefits *because of* or *conditioned on* age, illness, disability, death, or length of service.

The term "by reason of" is synonymous with "because of" or "on account of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 194 (1961) (defining "because of" as "by reason of : on account of"). It requires a causal connection between the phrase preceding it—"providing benefits"—and the list of factors that comes after it. *Cf. Rousey v. Jacoway*, 544 U.S. 320, 326–27 (2005) ("We have interpreted the phrase 'on account of' elsewhere within the Bankruptcy Code to mean 'because of,' thereby requiring a causal connection between the term that the phrase 'on account of' modifies and the factor specified in the statute at issue."). Accordingly, for any of the listed retirement products, the statute requires that one of the listed conditions triggers payment of benefits.

The bankruptcy judge took a more expansive view of section 815.18(3)(j), relying on reasoning from *In re Bogue*, 240 B.R. 742, 749 (Bankr. E.D. Wis. 1999), in which another bankruptcy judge in Wisconsin read the statute to include any retirement product that was *purchased* by reason of age, death, etc. The trustee, on the other hand, argues for an interpretation that narrows the reach of the retirement-benefits exemption, at least where annuities are concerned. He proposes that to qualify for exemption as a "retirement benefit" under section 815.18(3)(j), an annuity must "provide[] income as a substitute for wages upon the withdrawal from occupation or

active working life" rather than "operat[ing] merely as a savings account."

Both interpretations stray from the statutory text. By its terms, the statute requires that the retirement product "*provid[e] benefits*" by reason of age, illness, death, etc., not that it be "*purchased*" by reason of age. Moreover, there is no special test for annuities.

Bronk's annuity begins paying on a fixed date—January 3, 2035—and thus does not pay benefits because of age, length of service, or the onset of an illness or disability. But the annuity also contains a death benefit. That feature brings it under the umbrella of section 815.18(3)(j).

There is a second requirement, however. To qualify for full exemption as a "retirement benefit," a retirement product must be either employer sponsored or "compl[y] with the provisions of the internal revenue code." § 815.18(3)(j)2.a. Bronk's annuity is not employer sponsored, so it must comply with the Internal Revenue Code to be exempt under section 815.18(3)(j). What it means to comply with the Internal Revenue Code is an important legal question not clearly answered by the text of the statute.

One possible meaning is that the retirement product must comply with Internal Revenue Code §§ 401–409, which govern tax treatment of certain retirement plans. But Wisconsin bankruptcy courts have uniformly interpreted the exemption as simply requiring that an annuity be tax deferred under

Internal Revenue Code § 72.[5] This approach originated prior to the addition of annuities to the life-insurance exemption in section 815.18(3)(f) in 2003, and we question whether it survives the change in the law. Many annuities that have nothing to do with retirement in fact provide benefits by reason of age or death, and if the requirement that an annuity comply with the Internal Revenue Code means only that it be tax deferred, a large swath of nonretirement annuities may fall under section 815.18(3)(j), making the annuity exemption under section 815.18(3)(f) largely redundant.

Despite these reservations, we do not reach the question whether Bronk's annuity "complies with" the Internal Revenue Code as required by section 815.18(3)(j)2.a. The trustee raised this issue for the first time in the district court, and even then simply asserted—without developing an argument—that Bronk's annuity was not tax qualified. The district judge

---

[5] *See, e.g.*, *In re Woller*, 483 B.R. 886, 900–01 (Bankr. W.D. Wis. 2012) ("The Wisconsin legislature did not expressly mandate compliance with the requirements of §§ 401–409 of the IRC (which cover pension, profit-sharing, stock bonus, and other retirement plans), and the Court will not write such a requirement into the exemption statute."); *In re Vangen*, 334 B.R. 241, 244 (Bankr. W.D. Wis. 2005) ("All that is required for an annuity to be exempt under this section is that it qualify for tax-deferred status under the Federal Internal Revenue Code."); *In re Bogue*, 240 B.R. 742, 746 (Bankr. E.D. Wis. 1999) ("The Wisconsin retirement benefits exemption statute does not limit its application to 'traditional' retirement plans, 'qualified' annuities, or annuities which comply with IRC §§ 401–409."); *In re Bruski*, 226 B.R. 422, 424 (Bankr. W.D. Wis. 1998) ("It is not whether the annuity is taxable in accordance with the code, but whether the tax is deferred in accordance with the code. If so, the annuity qualifies for the exemption.").

considered the argument waived and we agree. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010).

Accordingly, for the foregoing reasons, we REVERSE the judgment of the district court to the extent that it affirmed the disallowance of the exemption for the college savings plans. In all other respects, the judgment is AFFIRMED.