In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-2798

MARK WITTMAN, Trustee in Bankruptcy,

*Plaintiff-Appellant*,

*v.*

TIMOTHY A. KOENIG AND JILL M. KOENIG,

*Defendants-Appellees*.

Appeal from the United States Bankruptcy Court for the
Western District of Wisconsin.
No. 14-14446 — **Robert D. Martin**, *Judge*.

ARGUED FEBRUARY 16, 2016 — DECIDED JULY 26, 2016

Before POSNER, WILLIAMS, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. The sole issue in this appeal is how to apply a Wisconsin statute that exempts from the assets available to creditors to execute judgments a debtor's annuity contract that "complies with the provisions of the internal revenue code." See Wis. Stat. § 815.18(3)(j)2.a. The Wisconsin statute does not specify which of the Internal Revenue Code's provisions (codified in Title 26 of the United States Code) an annuity must comply with to qualify for an exemption. But

the statute does require us to construe the exemption to "secure its full benefit to debtors." Wis. Stat. § 815.18(1).

In this case, debtors Timothy and Jill Koenig claimed exemptions under § 815.18(3)(j) for several annuity contracts they owned. The trustee challenged the exemptions. He argued that an annuity, to qualify for the exemption, must comply with 26 U.S.C. §§ 401–09, which generally deal with tax-deferred "qualified" retirement plans. The debtors argue that an annuity is exempt under § 815.18(3)(j) as long as the annuity qualifies for favorable tax treatment under 26 U.S.C. § 72, which deals with annuities more generally. The federal bankruptcy courts in Wisconsin have consistently agreed with the debtors' interpretation of the statute. We do too, so we affirm the judgment of the bankruptcy court. The key statutory text is ambiguous on the decisive point, but the statute's structure and purpose, along with the legislature's instruction to construe exemptions in favor of debtors, persuade us that the bankruptcy court and debtors are correct here.

I.  *Factual and Procedural Background*

Timothy and Jill Koenig filed for Chapter 7 bankruptcy protection in 2014. They claimed exemptions under Wisconsin's bankruptcy exemption statute for three annuities worth a total of $292,185.97 as of the date of the bankruptcy. They had bought those annuities in the approximately year and a half before filing their bankruptcy petition. See 11 U.S.C. § 522(b)(3)(A) (allowing state-law bankruptcy exemptions). The trustee objected to the exemptions. Following prior decisions of bankruptcy courts in Wisconsin, the bankruptcy court overruled the trustee's objection and held that the annuities are exempt from the bankruptcy estate. The trustee, the debt-

ors, and this court all agreed it was appropriate to use the procedure under 28 U.S.C. § 158(d)(2)(A) to bypass the district court and to try to resolve this issue of law on direct appeal to our circuit. We review *de novo* this issue of statutory interpretation. *In re Bronk*, 775 F.3d 871, 875 (7th Cir. 2015).

Wisconsin's exemption statute defines an annuity broadly as "a series of payments payable during the life of the annuitant or during a specific period." Wis. Stat. § 815.18(2)(am). An annuity can fall into one of two statutory bankruptcy exemptions under § 815.18(3). Paragraph (3)(j) fully exempts retirement assets, including annuities, that meet certain requirements discussed below. Paragraph (3)(f) protects a broader category of annuities that do not meet the requirements of (3)(j). See Wis. Stat. § 815.18(3)(f)2. But paragraph (3)(f) imposes dollar limits on the amount of the exemption. The exemption is limited to $150,000, except that the cap is just $4,000 for annuities issued less than 24 months before the debtor claims the exemption.[1]

---

[1] Section 815.18(3) provides that listed property is exempt, with exceptions not applicable here, and paragraph (3)(f) reads in full:

(f) *Life insurance and annuities*. 1. In this paragraph, 'applicable date' means the earlier of the following:

    a. The date on which the exemption is claimed.

    b. The date, if any, that the cause of action was filed that resulted in the judgment with respect to which the execution order was issued.

2. Except as provided in subd. 3. and par. (j), any unmatured life insurance or annuity contract owned by the debtor and insuring the debtor, the debtor's dependent, or an individual of whom the debtor is a dependent, other than a credit life insurance contract, and the debtor's aggregate interest, not to exceed $150,000 in

The debtors argue that their annuities meet the requirements for the full exemption under § 815.18(3)(j). Paragraph (3)(j) applies to "Assets held or amounts payable under any retirement, pension, disability, death benefit, stock bonus, profit sharing plan, *annuity*, individual retirement account, individual retirement annuity, Keogh, 401-K or similar plan or contract … ." Wis. Stat. § 815.18(3)(j)1 (emphasis added). But paragraph (3)(j) imposes additional requirements on the assets it protects. First, those assets must provide "benefits by reason of age, illness, disability, death or length of service and payments made to the debtor therefrom." *Id.*; *In re Bronk*, 775 F.3d at 877. Second, the assets must be either employer-sponsored *or* debtor-owned assets that "compl[y] with the provisions of the internal revenue code." Wis. Stat. § 815.18(3)(j)2.[2]

---

value, in any accrued dividends, interest, or loan value of all unmatured life insurance or annuity contracts owned by the debtor and insuring the debtor, the debtor's dependent, or an individual of whom the debtor is a dependent.

3. a. If the life insurance or annuity contract was issued less than 24 months before the applicable date, the exemption under this paragraph may not exceed $4,000.

b. If the life insurance or annuity contract was issued at least 24 months but funded less than 24 months before the applicable date, the exemption under this paragraph is limited to the value of the contract the day before the first funding that occurred less than 24 months before the applicable date and the lesser of either the difference between the value of the contract the day before the first funding that occurred less than 24 months before the applicable date and the value of the contract on the applicable date or $4,000.

[2] The exemption in § 815.18(3)(j) provides in full:

(j) *Retirement benefits*. 1. Assets held or amounts payable under any retirement, pension, disability, death benefit, stock bonus, profit sharing plan, annuity, individual retirement account, individual retirement annuity, Keogh, 401-K or similar plan or contract providing benefits by reason of age, illness, disability, death or length of service and payments made to the debtor therefrom.

2. The plan or contract must meet one of the following requirements:

   a. The plan or contract complies with the provisions of the internal revenue code.

b. The employer created the plan or contract for the exclusive benefit of the employer, if self-employed, or of some or all of the employees, or their dependents or beneficiaries and that plan or contract requires the employer or employees or both to make contributions for the purpose of distributing to the employer, if self-employed, the employees, or their dependents or beneficiaries, the earnings or the principal or both of a trust, annuity, insurance or other benefit created under the plan or contract and makes it impossible, at any time prior to the satisfaction of all liabilities with respect to beneficiaries under a trust created by the plan or contract, for any part of the principal or income of the trust to be used for or diverted to purposes other than for the exclusive benefit of those beneficiaries.

3. The plan or contract may permit the income created from personal property held in a trust created under the plan or contract to accumulate in accordance with the terms of the trust. The trust may continue until it accomplishes its purposes. The trust is not invalid as violating the rule against perpetuities or any law against perpetuities or the suspension of the power of alienation of title to property.

4. The benefits of this exemption with respect to the assets held or amounts payable under or traceable to an owner-dominated plan for or on behalf of a debtor who is an owner-employee shall be limited to the extent reasonably necessary for the support of the debtor and the debtor's dependents.

The trustee and the debtors agree that the Koenigs' annuities pay benefits by reason of age and death and are not employer-sponsored. The parties further agree that the annuities comply with 26 U.S.C. § 72 but do not comply with §§ 401–09. The decisive issue is whether an annuity that complies with § 72 but not with §§ 401–09 "complies with the provisions of

---

5. This exemption does not apply to an order of a court concerning child support, family support or maintenance payments, or to any judgment of annulment, divorce or legal separation.

6. In this paragraph:

a. 'Employer' includes a group of employers creating a combined plan or contract for the benefit of their employees or the beneficiaries of those employees.

b. 'Owner-dominated plan' means any plan or contract that meets the requirements of subd. 2. and under which 90% or more of the present value of the accrued benefits or 90% or more of the aggregate of the account is for the benefit of one or more individuals who are owner-employees. For purposes of this definition, the accrued benefits or account of an owner-employee under a plan or contract shall include the accrued benefits or account of the spouse, any ancestor or lineal descendant, whether by blood or by adoption, or the spouse of such a lineal descendant, of the owner-employee under the same plan or contract.

c. 'Owner-employee' means any individual who owns, directly or indirectly, the entire interest in an unincorporated trade or business, or 50% or more of the combined voting of all classes of stock entitled to vote or the total value of shares of all classes of stock of a corporation, or 50% or more of the capital interest or profits interest of a partnership or limited liability company.

the internal revenue code" within the meaning of the (3)(j) exemption.

Federal bankruptcy courts in Wisconsin have held consistently that annuities that qualify for tax deferred status under 26 U.S.C. § 72 satisfy the requirements of § 815.18(3)(j). See *In re Woller*, 483 B.R. 886, 900–01 (Bankr. W.D. Wis. 2012); *In re Vangen*, 334 B.R. 241, 244 (Bankr. W.D. Wis. 2005); *In re Bogue*, 240 B.R. 742, 745–46 (Bankr. E.D. Wis. 1999); *In re Bruski*, 226 B.R. 422, 424–26 (Bankr. W.D. Wis. 1998). A trustee raised this question of statutory construction before this court in *In re Bronk*. We noted a reservation about the earlier decisions of the bankruptcy courts, but we held that the trustee had waived the issue in that case by failing to raise it in the bankruptcy court. 775 F.3d at 878. No other reported cases have construed which Internal Revenue Code provisions satisfy the "complies with" requirement under § 815.18(3)(j)2.a. We have not directly faced the question until this case, where the question is presented squarely, with able briefing and argument on both sides.

We now affirm the bankruptcy courts' longstanding construction of § 815.18(3)(j). As instructed by the Wisconsin Supreme Court, we first consider the statute's language and also look to the statute's structure and purpose to inform our analysis of the statutory language. See *State ex rel. Kalal v. Circuit Court for Dane County*, 681 N.W.2d 110, 123–26 (Wis. 2004). If the language is ambiguous, we may also consider external sources such as legislative history, albeit with suitable caution. See *id.* at 125–26.

II.  *Statutory Language*

We begin with the text of the Wisconsin statute. *Id.* at 124. The phrase "complies with the provisions of the internal revenue code" is not further defined or explained in the statutory language. Several provisions of the Internal Revenue Code could apply to an annuity, and the statute does not signal a preference among them. See, e.g., 26 U.S.C. §§ 72 (annuities generally), 403 (employer-sponsored annuities), 408(b) (individual retirement annuities). Some other states specify in similar exemption statutes which provisions of the Internal Revenue Code apply. See, e.g., Cal. Civ. Proc. Code § 703.140(b)(10)(E)(iii); Kan. Stat. § 60-2308(b); S.C. Code § 15-41-30(A)(11)(e)(iii). The Wisconsin legislature has not been so specific.

What does it mean for an annuity to "comply with" the Internal Revenue Code? We agree with the Wisconsin bankruptcy courts, which have held that "complies with" means eligibility to receive the tax deferral applicable to annuities under the Internal Revenue Code. Since the Internal Revenue Code taxes most income in one way or another, the critical issue in taxing an annuity is whether the taxpayer can benefit from deferred taxation of the implicit appreciation of the principal paid up front for the stream of later income. Accordingly, the most sensible reading of the statute is that the exemption should not depend on "whether the annuity is taxable in accordance with the code" but rather "whether the tax is deferred in accordance with the code." *In re Bruski*, 226 B.R. at 424; see also *In re Kirchen*, 344 B.R. 908, 913 (Bankr. E.D. Wis. 2006) (noting that to determine whether an IRA "complies with" the Internal Revenue Code "one must consult the Internal Revenue Code, specifically 26 U.S.C. § 408. Section 408(a)

defines IRA, and provides several requirements for IRAs to qualify for special tax treatment."). But several provisions of the Internal Revenue Code can apply to annuities.

The trustee argues that the statutory phrase "the provisions" of the Internal Revenue Code in paragraph (3)(j) indicates that the statute requires compliance with "*the* plural *provisions* applicable to the annuities (§§ 401–409)" rather than "*a* singular *provision* (§ 72)." (Emphasis in original.) The argument is not persuasive. An annuity plainly does not have to comply with multiple provisions of the Internal Revenue Code to qualify for an exemption under paragraph (3)(j). For example, an individual retirement annuity under § 408(b) is within the range of Internal Revenue Code provisions the trustee identifies, and § 408(b) is a single provision of the Internal Revenue Code.

The trustee's argument also lacks force because few if any annuities can "comply" with all the provisions possibly applicable to annuities, even within 26 U.S.C. §§ 401–09. It would not make sense, for example, to require an individual retirement annuity to comply with the Internal Revenue Code provisions applicable to employer-sponsored annuities, or vice versa. Compare 26 U.S.C. § 403 (employer-purchased annuities), with § 408(b) (individual retirement annuities). And the trustee's argument does not offer guidance for how courts should pick and choose among those provisions. The language of § 815.18(3)(j) thus does not tell us which provisions of the Internal Revenue Code will satisfy it.

III. *Statutory Structure and Purpose*

We next look to the structure and purpose of the statute. "[S]tatutory language is interpreted in the context in which it

is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Kalal*, 681 N.W.2d at 124. "[S]cope, context, and purpose are perfectly relevant to a plain-meaning interpretation of an unambiguous statute … ." *Id.* at 125. The trustee argues that the statute sets up a structure in which (1) investment annuities that are not employer-provided or intended for retirement fall under a broad paragraph (3)(f) category and are subject to dollar caps, and (2) only annuities that are either employer-provided or comply with the retirement provisions found in 26 U.S.C. §§ 401–09 fall into a narrower category under paragraph (3)(j).

We disagree. Paragraph (3)(j) is written broadly. By its terms, it also applies to any plan or contract "similar" to those it specifically lists, as long as that plan or contract meets other requirements, such as complying with unspecified Internal Revenue Code provisions. See Wis. Stat. § 815.18(3)(j)1 and (3)(j)2.a. It is not clear from this language that we should limit paragraph (3)(j)'s reach to "retirement" assets.

And "retirement" annuities are not necessarily limited to those qualifying under §§ 401–09. The statute does not draw a clear, objective line separating retirement from non-retirement assets. Qualified plans under §§ 401–09 have annual contribution limits. See, e.g., 26 U.S.C. § 402(g). Many people can use alternative retirement investment vehicles in addition to the methods codified in §§ 401–09, and annuities taxable under § 72 can be retirement investments.[3]

---

[3] According to one investment firm, "Deferred annuities can be a good way to boost your retirement savings once you've made the maximum

Nothing in the structure or text of the exemption statute, which we must construe to the debtors' advantage, indicates that we should exclude from paragraph (3)(j) annuities that an individual debtor bought in addition to or in lieu of more traditional retirement options.

Contrary to the trustee's argument, the bankruptcy courts' broad interpretation of paragraph (3)(j) would not leave paragraph (3)(f) as an empty set for annuities. "Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." *Kalal*, 681 N.W.2d at 124. As a general rule, then, we should avoid an interpretation of paragraph (3)(j) that would leave paragraph (3)(f) inoperative. But the bankruptcy courts' broad interpretation of paragraph (3)(j) would not create this problem. Paragraph 815.18(2)(am) defines an annuity as simply "a series of payments payable during the life of the annuitant or during a specific period." Not every series of payments that would qualify as an annuity under § 815.18(2)(am) meets paragraph (3)(j)'s requirements or complies with 26 U.S.C. § 72.

---

allowable contributions to your 401(k) or IRA." *What Are Annuities?*, Fidelity Investments, https://www.fidelity.com/annuities/what-are-annuities. Another firm states, "A deferred annuity can be a great way to continue your retirement saving if you've already contributed the maximum to other retirement accounts." *Add to Your Retirement Savings with a Deferred Annuity*, The Vanguard Group, https://investor.vanguard.com/annuity/deferred. A Forbes columnist and former editor gave similar advice, for certain investors who "have exhausted other forms of tax-favored retirement savings, like 401(k)s and IRAs" if they can keep fees and costs low. William Baldwin, *How the Smart Money Uses Tax-Deferred Annuities*, Forbes, May 17, 2011, http://www.forbes.com/sites/baldwin/2011/05/17/how-the-smart-money-uses-tax-deferred-annuities. All websites cited in this opinion were last visited July 25, 2016.

Paragraph (3)(j) would still cover only a subset of annuities, even if we include within its scope annuities that comply with 26 U.S.C. § 72. Regardless of any other requirements, paragraph (3)(j) requires annuities to pay "benefits by reason of age, illness, disability, death or length of service." Wis. Stat. § 815.18(3)(j)1; *In re Bronk*, 775 F.3d at 877. And 26 U.S.C. § 72 comes with its own requirements. See, e.g., § 72(s)(1) (requirements for payments in the event of the holder's death); § 72(q) (penalty for premature distributions). Allowing paragraph (3)(j) exemptions for annuities that comply with § 72 would not allow just any annuity, however structured, to qualify for the exemption. There would still be significant restrictions.

Income from an installment sale, for example, might still be covered by paragraph (3)(f) rather than (3)(j). Installment sale income is taxed under 26 U.S.C. § 453 rather than any of the Internal Revenue Code provisions applicable to annuities. And some installment sales might well qualify as an "annuity" under Wisconsin Statutes § 815.18(2)(am)'s broad definition. Some private annuity contracts might also fail to comply with 26 U.S.C. § 72. See *Whether the Private Annuity or Installment Sale Rules Apply*, Federal Tax Coordinator ¶ J-5262, 1997 WL 502239 (2d ed. 2016); see also Prop. Treas. Reg. §§ 1.1001-1(j), 1.72-6(e), 71 Fed. Reg. 61441-01 (Oct. 18, 2006). Private annuities are contracts between private individuals, often family members, where one party sells a valuable asset in exchange for an annuity, usually for estate planning purposes. See generally Alexander A. Bove Jr., *Is the Private Annuity Really Dead?*, Probate & Property, March/April 2015. Installment sale income or a private annuity could fall under Wisconsin Statutes § 815.18(2)(am)'s broad definition of annuity—"a series of payments payable during the life of the annuitant or during a specific period"—but not comply with 26 U.S.C. § 72 and

thus not qualify for the paragraph (3)(j) exemption and be subject to (3)(f) instead.[4]

The debtors' full use of the paragraph (3)(j) exemption would not frustrate the purpose of the Wisconsin and federal bankruptcy statutes. There is nothing unlawful about structuring one's assets to take advantage of the bankruptcy laws as Congress and the Wisconsin Legislature have seen fit to write them. Judge Learned Hand famously wrote about tax planning that "there is nothing sinister in so arranging one's affairs as to keep taxes as low as possible. Everybody does so, rich or poor; and all do right, for nobody owes any public duty to pay more than the law demands: taxes are enforced exactions, not voluntary contributions." *Commissioner v. Newman*, 159 F.2d 848, 850–51 (2d Cir. 1947) (Hand, J., dissenting). The same applies to bankruptcy planning; no debtor owes her creditors more than the law demands. See *In re Smiley*, 864 F.2d 562, 566 (7th Cir. 1989) (noting that the law allows a debtor "to make full use of the exemptions to which he is entitled under the law"), quoting H.R. Rep. No. 95-595 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6317, and S. Rep. No. 95-989 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5862. Both the federal bankruptcy code and the Wisconsin exemption

---

[4] This is more than just a legal hypothetical. The IRS reports that improper use of private annuities is on the rise. See *Abusive Tax Shelters Again on the IRS "Dirty Dozen" List of Tax Scams for the 2015 Filing Season*, Internal Revenue Service (February 3, 2015), available at https://www.irs.gov/uac/Newsroom/Abusive-Tax-Shelters-Again-on-the-IRS-Dirty-Dozen-List-of-Tax-Scams-for-the-2015-Filing-Season ("IRS personnel continue to see an increase in the improper use of private annuity trusts … ."). And litigation over the tax treatment of private annuities is not unheard of. See, e.g., *Katz v. Commissioner*, 96 T.C.M. (CCH) 396, at *2–3 (T.C. 2008); *Rye v. United States*, 25 Cl. Ct. 592, 593–94 (Cl. Ct. 1992).

statute contain fraudulent transfer provisions that protect creditors. See 11 U.S.C. § 548; Wis. Stat. § 815.18(10). The trustee has not invoked those provisions here.

To cap off our analysis, in § 815.18 itself the Wisconsin legislature chose to require a liberal construction of the exemption statute in a debtor's favor: "This section shall be construed to secure its full benefit to debtors and to advance the humane purpose of preserving to debtors and their dependents the means of obtaining a livelihood, the enjoyment of property necessary to sustain life and the opportunity to avoid becoming public charges." Wis. Stat. § 815.18(1). We may not "write exemptions into statutes," but based on this legislative instruction, we must broadly interpret the exemptions the legislature has created. *In re Geise*, 992 F.2d 651, 656 (7th Cir. 1993). Because the debtors' reading of paragraph (3)(j) is consistent with the language and structure of the statute, we construe the arguable ambiguity in the key statutory phrase, "complies with the provisions of the internal revenue code," to give the debtors its "full benefit." An annuity that qualifies for tax deferral under 26 U.S.C. § 72, as the debtors' annuities do in this case, "complies with the provisions of the internal revenue code." See generally *Kalal*, 681 N.W.2d at 124 ("Statutory interpretation involves the ascertainment of meaning, not a search for ambiguity.") (citation and internal quotation marks omitted).

IV. *Legislative History*

The legislative history is not inconsistent with our conclusion based on the statute's language, structure, and purpose. Although it is not determinative for our analysis, we examine the legislative history to respond to the parties' arguments. Wisconsin's statutory interpretation method "prevents the

use of extrinsic sources of interpretation to vary or contradict the plain meaning of a statute." *Id.* at 126. This rule, however, has not stopped Wisconsin courts on occasion from consulting "legislative history to show how that history supports our interpretation of a statute otherwise clear on its face." *Seider v. O'Connell*, 612 N.W.2d 659, 671 (Wis. 2000); see also *Kalal*, 681 N.W.2d at 126 (noting, "as a general matter, legislative history need not be and is not consulted except to resolve an ambiguity in the statutory language, although legislative history is sometimes consulted to confirm or verify a plain-meaning interpretation").

There is some indication that the legislature intended paragraph (3)(j) to apply to annuities falling outside 26 U.S.C. §§ 401–09. The Wisconsin legislature adopted paragraph (3)(j) in its present form in 1990. As quoted in *In re Bogue*, a Wisconsin State Bar committee commented that the revisions were "intended to broaden the areas and items that are now exempt," while at the same time retaining language "not excluding 'non-qualified' plans." 240 B.R. 742, 746 (Bankr. E.D. Wis. 1999). The committee felt this was "fair and reasonable" in light of the retirement savings options available to the "average wage earner." *Id.* This State Bar commentary provides some reason to think the drafters of paragraph (3)(j) intended the exemption to apply to a broader swath of retirement plans than those qualifying under 26 U.S.C. §§ 401–09.

The trustee argues that later developments indicate that the legislature intended a narrower scope for paragraph (3)(j). In 2004, the legislature amended § 815.18 to add to paragraph (3)(f) debtor-owned annuities not already covered in (3)(j). The trustee argues that the Wisconsin Legislative Bureau's bill analysis indicates legislative intent that the (3)(j) exemption

should be read narrowly to apply only to annuities that comply with 26 U.S.C. §§ 401–09.

The trustee's argument based on the bill analysis does not persuade us to abandon the textual instruction to interpret ambiguities in favor of debtors. The bill analysis said that "Current law," meaning paragraph (3)(j), "does not address exemptions from creditor claims for an unmatured annuity that is owned by the debtor." *Wisconsin Bill Analysis, 2003 Regular Session, Senate Bill 504*, Wisconsin Legislative Reference Bureau, 2003. However, even at that time, paragraph (3)(j) already covered some annuities that were not sponsored by an employer: those that complied with the provisions of the Internal Revenue Code. Wis. Stat. § 815.18(3)(j)2.a (2003). If the broad language in the bill analysis was intended as the trustee reads it, it was just wrong. If it were given the force of law, then individual retirement annuities under 26 U.S.C. § 408(b) would not qualify for the (3)(j) exemption. See § 408(b) (referring multiple times to the "owner" of the individual retirement annuity). But neither the trustee nor anyone else believes that would be correct, for it would subject individual retirement annuities under § 408(b) to the dollar limits in paragraph (3)(f). The legislative history does not help the trustee.

The Wisconsin Legislature has shown no sign of repudiating the unbroken chain of federal bankruptcy court decisions broadly interpreting the "complies with" language in paragraph (3)(j). Legislative silence is ordinarily a weak indication of legislative intent. *Wenke v. Gehl Co.*, 682 N.W.2d 405, 416 (Wis. 2004) ("Numerous variables, unrelated to conscious endorsement of a statutory interpretation, may explain or cause legislative inaction."). But the dominance of federal bankruptcy courts in applying a state's exemption statutes means

that any legislature's study of a state's exemption statutes will need to look closely at federal bankruptcy decisions applying the state statutes.

It is difficult to imagine careful drafting of legislation in this field that would not consider decisions by the federal bankruptcy courts in the state. In this situation, then, it is reasonable to treat legislative silence as at least weak evidence that the bankruptcy courts' interpretation of Wisconsin Statutes § 815.18(3)(j) has not been objectionable to the legislature. Cf. *Schill v. Wisconsin Rapids School District*, 786 N.W.2d 177, 204–05 (Wis. 2010) (taking legislative inaction as evidence of legislative intent when there was a "long-standing" opinion of the Attorney General on the construction of a statute and the legislature had since made "numerous" other amendments to the law). If the Wisconsin legislature were to disagree with the earlier bankruptcy decisions or this decision, it would not be difficult to revise § 815.18(3)(j) to undo them for future cases.

The decision of the bankruptcy court treating the debtors' annuities as exempt from creditors is AFFIRMED.